■ BERTA STEIN, as Executrix of ZOLTAN STEIN, Also Known as SHALOM STEIN, Deceased, Respondent, v LEBOWITZ-PINE VIEW HOTEL, INC., Appellant. — Weiss, J. Appeal (1) from a judgment of the Supreme Court in favor of plaintiff, entered April 11, 1984 in Albany County, upon a verdict rendered at Trial Term (Kahn, J.), and (2) from an order of said court, entered May 29, 1984 in Albany County, which denied defendant's motion to set aside the verdict.

On August 6, 1980, Zoltan Stein (also known as Shalom Stein), together with his wife and daughter, were guests at defendant's Pine View Hotel in Sullivan County. Between 12:00 and 12:30 P.M. that day, Stein was found at the bottom of the hotel's indoor swimming pool. Attempts to revive him failed and the Coroner pronounced him dead at the scene, listing the cause of death on the death certificate as "drowning by submersion", with "probably acute myocardial infarction" shown as a contributing factor.

In the trial of this action to recover damages for the wrongful death and conscious pain and suffering of decedent, plaintiff

sought to prove that decedent hit his head prior to falling into the pool and that the drowning occurred because of the absence of a lifeguard. Plaintiff also offered proof that plaintiff's sister lied to the Coroner by telling him that decedent had a heart condition, in order to avoid the performance of an autopsy which is forbidden by Orthodox Judaism. The jury returned a verdict in plaintiff's favor for $450,000. Defendant has appealed from the judgment entered as well as from the order denying its motion to set aside the verdict, raising numerous contentions or assignments of error which we address seriatim.

First, defendant contends that the evidence of the cause of death was speculative and insufficient, plaintiff having primarily relied upon the death certificate and Coroner's report as prima facie proof of causation. "Subdivision 3 of section 4103 of the Public Health Law provides that a properly certified death certificate is 'prima facie evidence in all courts and places of the facts therein stated'" (*Anderson v Commercial Travelers Mut. Acc. Assn.*, 73 AD2d 769). Thus, the certificate, as supported by the Coroner's report, was properly accepted as proof of causation (CPLR 4520). Defendant next contends that the award of $50,000 for conscious pain and suffering was unwarranted because plaintiff failed to establish that decedent was conscious after allegedly striking his head before falling into the pool. The record shows that the lifeguard was away from the pool just prior to discovery of decedent's body. Plaintiff's expert testified that a person drowning would live four to eight minutes and struggle prior to death. Moreover, the witness did not testify that decedent was rendered unconscious. It follows that sufficient evidence of probable struggle was presented to support the award.

Nor can we accept defendant's assertion that plaintiff should be equitably estopped from recovery because her sister concededly lied to the Coroner in stating that decedent had a heart condition, so as to avoid an autopsy. While equitable estoppel is applied to prevent a party to an agreement or contract from benefiting from a fraud or misrepresentation made under the contract (*see, e.g., McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465; *Triple Cities Constr. Co. v Maryland Cas. Co.*, 4 NY2d 443), the doctrine is inapplicable here. Despite her sister's representations, plaintiff herself repeatedly insisted both to the Coroner and the hotel rabbi that her husband "was not sick, he was a healthy man, he was a healthy man". Since plaintiff made no misrepresentations, she cannot be equitably estopped from recovery.

Defendant next contends that the trial court erred in allowing plaintiff to testify as to statements made to her by the hotel

rabbi, as well as further conversations which plaintiff's sister had with the rabbi and Coroner, to which plaintiff was privy. These statements again related to decedent's health and were allegedly made to dissuade the Coroner from ordering an autopsy. Orthodox Judaism forbids performance of an autopsy as a desecration of the body which would prevent resurrection. Contrary to defendant's characterization of these statements as inadmissible hearsay, plaintiff did not offer the challenged testimony as proof of the truth of the facts asserted in the statements, i.e., that decedent had a heart condition. Rather, the testimony sought only to establish the state of mind of plaintiff at that moment, as affected by the religious prohibition against an autopsy, and her sister's attempts to avoid such a violation. We find no error in the admission of this testimony (Richardson, Evidence § 205, at 181 [Prince 10th ed 1973]). Nor was it error to preclude testimony by the investigating police officer concerning conversations overheard at the hotel between plaintiff, her sister, the rabbi and the Coroner about decedent's health. Defendant argues that these statements were admissions by plaintiff and her sister, and thus properly admissible on rebuttable as exceptions to the hearsay rule. We disagree. Plaintiff's testimony that her husband was a healthy man was certainly not a statement against her interest (21 NY Jur, Evidence, § 280 [1961]). On cross-examination, the sister admitted making the prior inconsistent statement and was subject to examination thereon. Since she recalled the statement, extrinsic evidence to prove she had made it was unnecessary (see, Fisch, New York Evidence § 476, at 312 [2d ed 1977]). Therefore, the trial court correctly excluded the officer's testimony as hearsay without an applicable exception.

Defendant has raised numerous additional evidentiary issues which are similarly availing. Since plaintiff's expert witness confirmed that his opinion was not premised on a retainer letter and investigator's report provided by plaintiff's attorney, defendant was properly precluded from viewing these documents (CPLR 3101 [c]; see, Sachs v Fumex Sanitation, 75 AD2d 595, 596). The hypothetical question posed to plaintiff's expert witness did not distort the facts, since decedent's physician confirmed that he was in good health, notwithstanding certain physical ailments. Certain laboratory reports, X rays and electrocardiograms included in the file of decedent's physician and entered by either the physician or his staff were admissible pursuant to CPLR 4518 (a). That these records were prepared by other persons merely affects the weight of this evidence, not its admissibility. Although we recognize that plaintiff's medical expert was improperly allowed to reiterate his opinion as to the

timing of the drowning on rebuttal, no undue prejudice inured to defendant from this error since the jury had already heard this same opinion. Further rebuttal was warranted as to the effectiveness of the cardiopulmonary resuscitation procedure utilized on decedent, since defendant initiated this inquiry during his direct examination of the lifeguard.

We further find no impropriety in the trial court's refusal to charge the jury that plaintiff's sister had committed a *possible* misdemeanor in misrepresenting the status of decedent's health to the Coroner (*see,* CPLR 4513; Public Health Law § 4102 [1] [a]). Since the jury was cognizant of this conceded misrepresentation and the trial court adequately instructed the jury as to credibility, no further instruction was necessary. That the Coroner was not available to testify as to the validity of the death certificate did not warrant a mistrial or continuance, inasmuch as defendant failed to overcome the presumption that the certificate was properly prepared (*see, People v Goodenough,* 89 Misc 2d 455, 456). Contrary to defendant's assessment, plaintiff did not challenge the primary conclusion of death by drowning set forth in the certificate. The trial court correctly charged the jury as to work-life expectancy premised on uncontroverted testimony that decedent would have been employed as a cantor until his death. Nor was the charge otherwise inadequate. Finally, since defendant offered no direct proof of negligence on defendant's part, the affirmative defense of contributory negligence was properly dismissed.

As to the verdict, our review of the record confirms a rational basis for the jury's finding of negligence, since plaintiff introduced evidence that decedent could not have drowned in less than four minutes, and that no lifeguard was present during this critical period. Thus, defendant's motion for judgment notwithstanding the verdict was properly denied (*see, Cohen v Hallmark Cards,* 45 NY2d 493, 499). Decedent being the sole provider for his family, and there being substantiation in the record of his present and future earnings, we cannot say that the award of $400,000 for wrongful death and $50,000 for conscious pain and suffering was in any way excessive.

Judgment and order affirmed, with costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.