NORMA MERCED, as Administratrix of the Estate of DENISE L. B. MERCED, Deceased, Plaintiff, v CITY OF NEW YORK, Defendant.

Supreme Court, Bronx County, February 6, 1987

## APPEARANCES OF COUNSEL

*Frederick A. O. Schwarz, Jr., Corporation Counsel (Vito Canavo of counsel), for defendant. Irom & Wittels (Joseph Irom of counsel), for plaintiff.*

## OPINION OF THE COURT

BARRY SALMAN, J.

The defendant's motion for a judgment notwithstanding the verdict or a request for a new trial or in the alternative to set aside the verdict on the grounds of excessiveness as to damages is disposed of as follows:

The jury returned a verdict against the City of New York in the sum of $84,000 for conscious pain and suffering and $960,000 for the wrongful death of the decedent.

On June 3, 1982, at approximately 12:55 A.M., two police officers accepted a call from a 911 dispatcher. The dispatcher related that the calls had been received from tenants residing at 3435 Giles Place. The complainants reported that they had heard loud screams coming from apartment 7A and that a man with a gun was seen near the apartment. The police officer arrived at the designated address, entered the vestibule and rang apartment 7A's bell, so that they could gain entry into the building.

After receiving no response they returned to their patrol car and told 911 to call the complainant back so that she could buzz them into the building. Upon their return to the vestibule the officers were "buzzed" in, presumably by one of the complainants. As soon as the officers entered the lobby they encountered a tenant, who was not one of the complain-

ants, but who nevertheless proceeded to inform the officers that everything was quiet and that it was probably just a family dispute. Whereupon the police officers departed without any further investigation. The officers never left the vestibule; they did not go up to the seventh floor to investigate the incident.

Shortly after, the 911 dispatcher received another call from a prior caller stating that the police had not yet responded and that emergency assistance was needed. The 911 dispatcher contacted the same police officers, who stated that all was well and under control. The officers did not return to the building to investigate. The following morning the body of Ms. Merced was discovered by her neighbors. Ms. Merced had bled to death due to a gunshot wound.

The 911 emergency number was established by New York City so that emergency assistance could be provided to the public in a more efficient and expedient manner. It is logical to assume that once a municipality receives a call for help through the 911 system, it is obligated to perform in a proper and reasonable manner.

If the municipality's actions are found to be unreasonable in relation to a specific set of circumstances then the municipality should be held liable for the consequences. Furthermore, "it would seem appropriate to consider that by accepting the call and agreeing to respond, the municipality had now narrowed a public duty to a special duty to that individual." (Comment, "911" Emergency Assistance Systems, 8 George Mason U L Rev 103, 121 [1985].)

The defendant cites that well-established rule that "a municipality cannot be held liable for negligence in the performance of a governmental function, including police or fire protection, unless a special relationship existed between the municipality and the injured party". *(De Long v County of Erie,* 60 NY2d 296, 304; *Garrett v Holiday Inns,* 58 NY2d 253; *Florence v Goldberg,* 44 NY2d 189, 195-196.)

Moreover, the court in *Helman v County of Warren* (111 AD2d 560, 561) stated that the plaintiff must "demonstrate the assumption of a limited duty which the municipality should have realized would lead the plaintiff to reasonably rely thereon and, as a result, places the plaintiff in a worse position than he would have been in but for the assumption of that duty". *(See, Shinder v State of New York,* 62 NY2d 945, 946; *De Long v County of Erie, supra,* at 305; *Garrett v Holiday Inns, supra,* at 262.)

■ In the present case, the previously mentioned reliance and assumption relating to the plaintiff must be broadened to include the callers or complainants who relied on the police officers for assistance. The police officers in responding assumed a responsibility and duty to act in a reasonable manner. Here, it is conceivable that "but for" this reliance upon the officers the callers or the decedent's neighbors may have affirmatively given aid to the decedent.

In *De Long v County of Erie* (60 NY2d 296, *supra)* the Court of Appeals held the municipality liable in the death of Mrs. De Long, who called 911 for assistance and relied upon the assurance of the 911 dispatcher that help was on the way. In the the present case, as in *De Long,* the help never arrived resulting in the death of the individual victim.

The caller in *De Long (supra)* was not properly identified, yet the court found that a special relationship had been established and that a duty was breached when the police officers after being directed to the wrong locality, were given no further directions and no other actions were taken.

It must be noted that in the present case the 911 dispatcher knew the identify of the caller, the police were given the correct locale and in addition they were informed of not one but two calls for assistance. Yet, despite all the correct information the police failed to investigate in a reasonable manner.

The court in *De Long (supra)* emphasizes that whether the municipality has acted reasonably depends upon the circumstances of the particular case. *(De Long v County of Erie, supra,* at 306.)* The police officers, here, did not act reasonably in their response to the 911 call and therefore the municipality should be responsible for the foreseeable consequences.

*De Long (supra)* clearly intimates that local governments will be held liable if they either fail to establish reasonable procedures for 911 apparatus or if such procedures are established, they are ignored or departed from in their operation. (Stein, Torts, 35 Syracuse L Rev 651, 658 [1984].) It is obvious from the evidence presented and from the admissions made by officers at a departmental hearing conducted by the Department of Internal Affairs of the New York City Police Department, that these officers violated the rules and regulations in the manner in which they responded to the 911 call and in the way they conducted the investigation.

Realistically, an individual who is in dire need of assistance is often too incapacitated to call 911. It is therefore necessary

to broaden the general rule so that any caller, who relies on the assurances of the municipality that they are on their way, created the requisite "special relationship" required to hold a municipality liable. The narrow scope of the *De Long* rule often provides unjust results for the injured victims and their families.

In *Garrett v Holiday Inns* (58 NY2d 253, *supra)* the Town of Greece was found to be liable because it affirmatively issued a certificate of occupancy to a motel that was unsafe for inhabitation. This affirmative action taken by the town is analogous to the affirmative action taken by the police in the present case. The officers when contacted by 911 for a second time affirmatively told the dispatcher that all was well, when in fact the officers had not properly investigated the incident.

Judge Wachtler clearly advocates "an abandonment of the special class limitations when recovery is sought for injuries suffered by members of the public as a result of a municipality's negligent approval of a dangerous condition it had a duty *to inspect* and correct." *(O'Connor v City of New York,* 58 NY2d 184, 193 [dissenting opn].) In other words, if a duty to inspect and investigate does exist, as it does in the present case, failure to pursue this duty is negligence, and therefore the city should be held liable.

Judge Keating in his lengthy and eloquent dissent in *Riss v City of New York* (22 NY2d 579, 590) envisions the courts, although with some setbacks, "moving * * * toward the day when government, in carrying out its various functions, will be held equally responsible for the negligent acts of its employees as would a private employer." The obvious injustice that the settled, but narrow rule promulgates calls for broader reform and the need for additional exceptions. *(O'Connor v City of New York, supra,* at 194.) A broadening of the general rule would not subject the municipality to open-ended liability, "it [would] simply mean that the municipalit[y] like all individuals and corporations [would] be liable for damages if they neglect to act with reasonable care". *(O'Connor v City of New York, supra,* at 195.) The plaintiff, in the present case, clearly falls within the exceptions that Judge Wachtler and Judge Keating envision. The defendant's claim that there was no causation between police failure to go the 7th floor and investigation and the ensuing death is refuted by expert testimony as to the length of time the deceased could have survived if medical attention was received. That issue was raised before the jury and after consideration they rendered

their verdict. The court believes that there was sufficient evidence to warrant this issue to go before the jury.

 The defendant further objects to the testimony of an expert witness regarding the loss of earnings and costs of a homemaker. The *De Long* court held that in an action to recover for the wrongful death of a deceased housewife with young children, the trial court, in the exercise of its discretion, properly allowed expert testimony as to the monetary "value of the types of services performed by the average housewife in the decedent's circumstances * * *. When the decedent is a housewife who is not employed outside the home the financial impact on the survivors, aside from compensable losses of a personal nature * * * will not involve a loss of income but increased expenditures to continue the services she was providing and would have provided if she had lived." *(Supra,* at 307.) Expert testimony would aid the jurors' knowledge as to the monetary value of a housewife's services.

In addition, the defendant objects to the fact that plaintiff was allowed recovery for both loss of earnings and the costs of a homemaker. In our modern society even if a mother does return to the work force, the child and home still need homemaker services.

At the time of her death the decedent was 22 years old, was married, and the mother of a 7-month-old infant son.

She had been employed prior to the birth of her son and had earned $250 gross per week but was not working at the time of death. An expert testified as to the prospective loss of earnings and the value of a homemaker for the infant until age 21 years.

The court after careful review believes the award for pecuniary loss under the facts and circumstances to be excessive. The court therefore will reduce the aspect of the jury award for pecuniary loss to the sum of $500,000.

The court cannot accept defense counsel's argument that the damages for pain and suffering were excessive and based on speculation. In *Stern v Lebowitz-Pine View Hotel* (111 AD2d 572 [1985]) the court upheld a $50,000 award for a drowning victim who probably lived and suffered from 4 to 8 minutes before drowning.

In this case the jury could find that the deceased survived and suffered from a gunshot wound for a period of time not to exceed 40 minutes, as testified by the medical experts, which ultimately resulted in her bleeding to death.

■ The court feels that there was ample evidence to support the jury award of $84,000 for conscious pain and suffering. The court further finds that the comments made by plaintiff's counsel during summations were not prejudicial.

In conclusion, the court finds that providing a municipality with blanket immunity in tort cases, without any regard for distinguishing factors in a particular case, creates an unjust and detrimental result. A more rational and logical solution would be to allow the rule to be expanded depending on the particular set of facts. The present case illustrates a perfect example where expansion of the rule is called for and therefore the plaintiffs should be permitted to recover for the tragedy that they have experienced.

Accordingly, defendant's motion is granted solely to the extent of directing a new trial on the damage issue for pecuniary loss for wrongful death only unless plaintiff, within 30 days after service upon him of a copy of this order with notice of entry, serves and files with the clerk of this court a written stipulation consenting to the reduction of the amount awarded for wrongful death to $500,000 and to the entry of an amended judgment accordingly.