718 A.2d 1161

Julia D. BEYNON et al.

v.

MONTGOMERY CABLEVISION LIMITED
PARTNERSHIP et al.

No. 86, Sept. Term, 1997.

Court of Appeals of Maryland.

Oct. 9, 1998.

462

---

Thomas P. Meehan (David Barmak, Mark S. Carlin, Marc L. Caden, Sherman, Meehan, Curtin & Ain, P.C., all on brief), Washington, DC, for Petitioners.

Hugh E. Donovan (Donovan & Broderick, P.C., on brief), Silver Spring, for Respondents.

Before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

Whether "pre-impact fright," or any other form of mental and emotional disturbance or distress, suffered by an accident victim who dies instantly upon impact is a legally compensable element of damages in a survival action is an issue hitherto unaddressed by this Court, but presented in this case. In Maryland, it is well-settled that, in the absence of a physical impact or injury directly resulting in harm, mental and emotional injuries such as fright are not compensable unless there are objective manifestations of such injury. *See*

*Green v. Shoemaker,* 111 Md. 69, 77–78, 73 A. 688, 691 (1909); *Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182, 184 (1933); *Vance v. Vance,* 286 Md. 490, 500, 408 A.2d 728, 733 (1979). *See also Matthews v. Amberwood Associates Ltd. Partnership, Inc. et al,* 351 Md. 544, 571–575, 719 A.2d 119, 132–134 (1998) [slip op. at 30–33]. We now hold that, in survival actions, where a decedent experiences great fear and apprehension of imminent death before the fatal physical impact, the decedent's estate may recover for such emotional distress and mental anguish as are capable of objective determination.

## I.

During the late evening hours of June 7, 1990, Montgomery Cable Vision Limited Partnership, doing business as Cable TV Montgomery ("Montgomery Cable"), discovered that one of its cables located at Interstate 495, the Capital Beltway, had either broken or fallen from a utility pole and needed repair. In order to repair the damaged cable, Montgomery Cable, pursuant a blanket permit issued to it by the Maryland State Highway Administration ("SHA"), coordinated with the Maryland State Police to have traffic on the beltway stopped during the early morning hours of June 8. This was accomplished around 2:00 a.m. with two police officers, one on each side of the Capital Beltway and Montgomery Cable employees were enabled to install a replacement cable. During the thirty to forty-five minutes that it took to complete the repair, traffic backed up approximately one mile on each side of the beltway. At the rear of the congestion on the westbound side of the beltway, James P. Kirkland ("Kirkland") was driving a tractor-trailer owned by James Lee ("Lee"), doing business as K & L Transportation. Kirkland testified, at trial, that his trailer was at a complete stop in one of the middle lanes. He also testified that he noticed that all four lanes of the beltway were occupied; he remembered that there was another tractor-trailer to his left and there may have been another truck in the right lane.

Douglas K. Beynon, Jr., ("Beynon" or the "decedent,"), also traveling westbound, was driving his employer's vehicle, with-

in the 55 m.p.h. speed limit. According to the evidence the plaintiffs presented at trial, Beynon was approximately 192 feet from the rear of Kirkland's tractor-trailer when he became aware of, and then reacted to, the impending danger of crashing into its rear. In his attempt to avoid the collision, Beynon slammed on his brakes, as 71½ feet of skid marks attest, and slightly veered to the right. Despite his efforts, Beynon's vehicle collided with the rear of the tractor-trailer at a speed of 41 m.p.h., with the result that he was killed on impact.

The petitioners, Julia D. Beynon, individually and as personal representative of her son's estate, and Douglas K. Beynon, Sr., the decedent's father, instituted two separate suits, which were later consolidated, in the Circuit Court for Montgomery County against, Kirkland, Lee and Montgomery Cable, and Lumbermens Mutual Casualty Company, the insurance provider for the tractor-trailer, intervened as a defendant (collectively, the "respondents"). The suits, both a wrongful death and a survivorship action, alleged that the respondents were negligent and were jointly and severally responsible for the crash. At trial, the petitioners presented evidence to show that Kirkland and Lee negligently operated the tractor-trailer and also negligently maintained it since the rear of the trailer was not properly illuminated and, therefore, was not sufficiently visible to motorists approaching from the rear. With respect to Montgomery Cable, the petitioners offered evidence to prove that Montgomery Cable violated specific conditions of the SHA blanket permit by failing to post advance warning signs to provide oncoming traffic with notice of the unusual and dangerous hazard that the unanticipated traffic back-up presented.

The petitioners conceded that the decedent suffered no conscious pain and suffering following the crash. Rather, they contended that the decedent suffered, and should be compensated for, "pre-impact fright"—the mental anguish the decedent suffered from the time he became aware of the impending crash until the actual collision. Agreeing that the petitioners had presented sufficient evidence of "pre-impact

fright," the trial court instructed the jury that it could consider and make an award for "pain, suffering and mental anguish" that the decedent experienced before the crash. The jury returned a verdict for the petitioners. The jury verdict awarded the decedent's father and mother $212,000.00 and $165,000.00, respectively, in economic losses, and each was awarded $500,000.00 for past mental pain and suffering and $750,000.00 for future pain and suffering. In addition, the jury awarded the decedent's estate $ 2,000.00 for funeral expenses [1] and $1,000,000.00 for "preimpact fright." The trial court reduced the latter award, pursuant to Maryland Code (1974, 1995 Repl.Vol.) § 11–108(b) of the Courts and Judicial Proceedings Article [2] and with the consent of the petitioners, to $350,000.00. The respondents appealed the judgment to

---

1. This was the maximum amount allowed at the time. See Maryland Code (1974, 1991 Repl.Vol.) § 7–401(x)(2) of the Estates and Trusts Article. By ch. 424, Laws of 1995, that section was amended to provide for the calculation of funeral expenses allowed by reference to § 8–106(b) of the Estates and Trusts Article. Section 8–106(b) presently provides for $5000.00 in funeral expenses.

2. Maryland Code (1974, 1995 Repl.Vol.) § 11–108(b) of the Courts and Judicial Proceedings Article provides:

"(b) *Limitation of $350,000 established.*—(1) In any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000.

"(2)(i) Except as provided in paragraph (3)(ii) of this subsection, in any action for damages for personal injury or wrongful death in which the cause of action arises on or after October 1, 1994, an award for noneconomic damages may not exceed $500,000.

"(ii) The limitation on noneconomic damages provided under subparagraph (i) of this paragraph shall increase by $15,000 on October 1 of each year beginning on October 1, 1995. The increased amount shall apply to causes of action arising between October 1 of that year and September 30 of the following year, inclusive.

"(3)(i) The limitation established under paragraph (2) of this subsection shall apply in a personal injury action to each direct victim of tortious conduct and all persons who claim injury by or through that victim.

"(ii) In a wrongful death action in which there are two or more claimants or beneficiaries, an award for noneconomic damages may not exceed 150% of the limitation established under paragraph (2) of this subsection, regardless of the number of claimants or beneficiaries who share in the award."

the Court of Special Appeals. The intermediate appellate court reversed the judgment for pre-impact fright. *Montgomery Cablevision Limited v. Beynon*, 116 Md.App. 363, 696 A.2d 491 (1997).

On appeal, the respondents did not challenge the reasonableness or excessiveness of the jury award. They contended, instead, *inter alia*, that the trial court "erred in failing to rule as a matter of law that there could be no recovery for 'pre-impact fright.'" *Id.* at 372–73, 696 A.2d at 495. This is so, they argued, because Maryland Code (1974, 1991 Repl.Vol.) § 7–401(x) of the Estates and Trust Article,[3] is in derogation of the common law, and its provisions do not recognize a cause of action for pre-impact fright, and because a claim for pre-impact fright is, in reality, an action for negligent infliction of emotional distress, a cause of action not recognized in Maryland. The Court of Special Appeals rejected both of these arguments. First, the court remarked that the common law does not necessarily establish the limitations on legal theories

---

**3.** Under that section,

(x) [a personal representative] may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted, except that:

(1) A personal representative may not institute an action against a defendant for slander against the decedent during the lifetime of the decedent.

(2) In an action instituted by the personal representative against a tort-feasor for a wrong which resulted in the death of the decedent, the personal representative may recover the funeral expenses of the decedent up to the amount allowed under § 8–106(b) of this article in addition to other damages recoverable in the action.

Maryland Code (1974, 1995 Repl.Vol.) § 6–401 of the Courts and Judicial Proceedings Article provides for the survival of certain causes of action. It states:

"(a) Except as provided in subsection (b) of this section, a cause of action at law, whether real, personal, or mixed, survives the death of either party.

"(b) A cause of action for slander abates upon the death of either party unless an appeal has been taken from a judgment entered in favor of the plaintiff.

"(c) A right of action in equity survives the death of either party if the court can grant effective relief in spite of the death."

that warrant judicial recognition. In other words, "[t]hat there has not previously been any recovery for pre-impact fright in a survival action is not a basis for concluding that there can never be an appropriate set of facts and circumstances that would permit a tort victim to recover damages for such emotional distress." *Montgomery Cablevision*, 116 Md. App. at 375, 696 A.2d at 496. Second, with respect to the analogy between pre-impact fright and a cause of action for negligent infliction of emotional distress, the court correctly stated that such an analogy simply "confuses the concept of allowance of damages for emotional distress as a consequence of a negligent tort with the refusal to recognize the existence of a separate tort of negligent infliction of emotional distress." *Id.*

Observing that there are no Maryland cases addressing the recoverability of damages for a decedent's pre-impact fright, the Court of Special Appeals was not persuaded by the pre-impact fright caselaw that it reviewed. *See Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45 (2nd Cir.1984)(applying New York law); *Haley v. Pan American World Airways*, 746 F.2d 311 (5th Cir.1984)(applying Louisiana law); *Platt v. McDonnell Douglas Corp.*, 554 F.Supp. 360 (E.D.Mich.1983)(applying Michigan law); *Solomon v. Warren*, 540 F.2d 777 (5th Cir.1976)(applying Florida law); *D'Angelo v. United States*, 456 F.Supp. 127 (D.Del.1978), aff'd, 605 F.2d 1194 (3rd Cir.1979)(applying Maryland law). It noted that most of the cases involved airplane crashes and were decided by federal courts "purporting" to apply state law. 116 Md. App. at 377, 696 A.2d at 497. The intermediate court looked instead to, and exhaustively analyzed, beginning with *Green v. T.A. Shoemaker & Co.*, 111 Md. 69, 73 A. 688 (1909) and ending with *Dobbins v. Washington Suburban Sanitary Comm'n*, 338 Md. 341, 658 A.2d 675 (1995), this Court's cases in which we addressed whether damages are recoverable for fright or emotional distress where there is no physical impact. Id. at 379–388, 696 A.2d at 498–503. Based on that analysis, the court concluded:

"[T]here can be no award of damages for pre-impact fright suffered by a tort victim who died instantly upon impact or who never regained consciousness after the impact, because no cause of action will lie for 'mere fright' without physical injury (*Green v. Shoemaker*) or injury capable of objective determination (*Vance v. Vance*, 286 Md. 490, 408 A.2d 728 (1979)) resulting therefrom. Obviously, one who died instantly upon impact or at least died without recovering consciousness following impact cannot have suffered any injury capable of objective determination *as a result of* pre-impact fright,[ ] i.e., fear, terror, or mental anguish or distress from anticipation of imminent injury or death."

*Montgomery Cablevision,* 116 Md.App. at 388, 696 A.2d at 503. Thus, the Court of Special Appeals reversed the trial court's judgment awarding the decedent's estate damages for pre-impact fright.

Dissenting, Chief Judge Murphy wrote that "[t]he pre-impact fright award is consistent with both Court of Appeals' precedent and the survivor's action provided for by a General Assembly that recognized the unfairness in allowing tortfeasors to benefit because the injuries they caused were fatal rather than serious." *Id.* at 404, 696 A.2d at 510–11. He also stated, quoting the trial court, that "there is no question but there had to have been absolute overwhelming mental anguish on the part of [the tort victim] between the moment that he saw the danger and the time that there actually was a crash." *Id.* at 403, 696 A.2d at 510.

By filing a petition for a writ of *certiorari,* the petitioners seek reversal of "the decision of a divided Court of Special Appeals that there can never be recovery for the pre-impact fright and mental anguish suffered by a tort victim who dies upon impact even when the evidence demonstrates that the victim was acutely aware of the impending danger and suffered pre-impact fright and anguish as he tried to avoid the fatal crash." (footnote omitted). We granted the petition to address this important issue. *Beynon v. Montgomery Cablevision,* 347 Md. 683, 702 A.2d 291 (1997).

## II.

On this appeal, the petitioners contend that "[t]he legal analysis of the pre-impact fright issue by the majority opinion of the Court of Special Appeals failed to recognize that different principles of law apply to cases where fright occurs in the seconds before an impact or crash causing bodily harm or death than in cases where there is no impact or crash directly causing bodily harm." Specifically, they argue:

"In reversing the trial court, the majority opinion of the Court of Special Appeals relied on Maryland cases in which there was *no impact directly producing a significant injury* and essentially ignored the facts that the fright and mental anguish in this case immediately preceded a crash that resulted in fatal bodily injuries. It thereby erroneously treated this as a case of "no impact fright" instead of "pre-impact fright." Its reliance on Maryland cases in which there was 'no impact' directly resulting in bodily injury was misplaced. In so narrowing its focus, the Court of Special Appeals failed to recognize the fundamental principle of tort law which underlies the decisions of the many jurisdictions that have allowed recovery for 'pre-impact fright.' "

(emphasis in original).

The petitioners acknowledge that, under common law negligence principles, fright immediately preceding an impact or crash resulting in no bodily harm constitutes an uncompensable element of damages. They also concede that, in Maryland, when there is no impact or crash directly resulting in bodily harm, fright is not compensable unless there are objective manifestations of injury or emotional distress resulting from the fright. The petitioners argue that neither its concession nor its acknowledgment applies in the instant case, where the fright experienced by the tort victim immediately preceded a physical impact, a crash, which caused the decedent's death. The petitioners thus contend that this Court should be guided by Restatement (Second) of Torts, § 456 (1965), which reads:

" § 456. Emotional Disturbance Resulting From an Actionable Injury or the Conduct Which Caused It

"If the actor's negligent conduct has so caused any bodily harm to another as to make him liable for it, the actor is also subject to liability for

"(a) fright, shock, or other emotional disturbance resulting from the bodily harm or from the conduct which causes it, and

"(b) further bodily harm resulting from such emotional disturbances."

This rule, according to the petitioners, applies in impact cases. The first comment to § 456 states that it "applies only where the negligent conduct of the actor has resulted in bodily harm to another, and has made the actor liable for such bodily harm." *Id.* at § 456 cmt. a.[4] Further, the petitioners point to the following additional comments to § 456 as providing the rationale for allowing the jury to award damages for pre-impact fright:

"c. Where the tortious conduct in fact results in bodily harm, and makes the actor liable for it, a cause of action is independently established, and there is sufficient assurance that the resulting emotional disturbance is genuine and serious. There may be recovery for such emotional disturbance even though the emotional disturbance does not result in any further bodily harm.

\* \* \*

"e. The rule stated in Clause (a) is not limited to emotional disturbance resulting from the bodily harm itself, but includes also such disturbance resulting from the conduct of the actor. Thus one who is struck by a negligently driven automobile and suffers a broken leg may recover not only for his pain, grief, or worry resulting from the broken leg, but also for his fright at seeing the car about to hit him."

---

**4.** Comment b provides as follows:

"Where the tortious conduct does not result in bodily harm, there can ordinarily be no recovery for mere emotional disturbance which has no physical consequences."

Restatement (Second) of Torts § 456 cmt. b.

*Id.* at § 456 cmts. c and e. "This explanation and example," the petitioners maintain, "make clear that one's fright prior to being struck and injured due to the negligence of another is compensable."

Interestingly, the respondents do not disagree, noting that "[t]here is truly no need to consider whether Maryland accepts § 456 of the Restatement of Torts" (emphasis omitted) because existing state law requires a demonstrable or objectively determinable injury in order for pre-impact fright to be compensable. They submit:

"Whether this court formally accepts this section of the Restatement as controlling in this type of case makes no difference, [as] the Court of Appeals of Maryland since 1909 has accepted the fact that a plaintiff is entitled to recover for fright even though there is no evidence of 'physical impact or corporal injury to the plaintiff.' *Green v. T.A. Shoemaker*, 111 Md. 69, 73 A. 688 (1909). This court has consistently followed Section 456 of the Restatement (without acknowledging it) by continuing to accept the *Green* opinion as controlling with only minor modifications."

Alternatively, the respondents maintain that, if this Court considers the standard articulated in § 456, it is important to do so in the context of § 436A and comment b thereto. Respectively, they state:

" § 436A.   Negligence Resulting in Emotional Disturbance Alone

"If the actor's conduct is negligent as creating an unreasonable risk of causing either harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

\* \* \*

"b.   The reasons for the distinction, as they usually have been stated by the court, have been three.   One is that emotional disturbance which is not so severe and serious as to have physical consequences is normally in the realm of

the trivial, and so falls within the maxim that the law does not concern itself with trifles. It is likely to be so temporary, so evanescent, and so relatively harmless and unimportant, that the task of compensating for it would unduly burden the courts and the defendants. The second is that in the absence of the guarantee of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely upon the subjective testimony of the plaintiff; and that to allow recovery for it might open too wide a door for false claimants who have suffered no real harm at all. The third is that where the defendant has been merely negligent, without any element of intent to do harm, his fault is not so great that he should be required to make good a purely mental disturbance."

Restatement (Second) of Torts § 436A and cmt. b (1965). These provisions, read in conjunction with § 456, the respondents argue, make clear that "there is a substantial concern over the possibility that trivial and/or fictitious claims might be filed." [5] In any event, the respondents, as does Restatement § 436 A, clearly echo concerns similar to those voiced by some courts that have refused to allow recovery for pre-impact fright. *See e.g., In re Air Crash Disaster Near Chicago,* 507 F.Supp. 21, 23–24 (N.D.Ill.1980); *Nye v. Commonwealth,* 331 Pa.Super. 209, 213–14, 480 A.2d 318, 321 (1984). *See also Solomon v. Warren,* 540 F.2d 777, 796–97 (5th Cir.1976), *cert. dismissed sub nom, Warren v. Serody,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977) (Gee, J., dissenting).

The respondents also argue that Maryland law requires "strict proof" that a tort victim actually suffered fright. The mere fact that the fatal impact in this case occurred following the alleged fright experienced by the decedent does not lessen, they submit, the requirements regarding the degree of proof necessary to entitle one to damages for emotional distress. The evidence adduced at trial, the respondents argue, was

---

**5.** The respondents do not allege that the instant case presents a trivial or fictitious claim of pre-impact fright.

insufficient to support the jury's award for pre-impact fright. Further, the respondents concede that the jury reasonably could have concluded, from the evidence, that the decedent attempted to avoid the collision. But, they posit, considering that no evidence of fright was presented and that the trial court gave the jury no guidance, no reasonable jury could have concluded that the decedent suffered fright of severe bodily harm or death during the seconds prior to the impact. In short, the respondents maintain that the jury's verdict as it related to pre-impact fright was based upon pure speculation.

### III.

Pursuant to the Maryland survivorship statute, unlike the wrongful death statute, Md.Code (1974, 1995 Repl.Vol., 1997 Supp.), §§ 3–901 through 3–904 of the Courts and Judicial Proceedings Article, the personal representative of a decedent's estate may bring "a personal action which the decedent might have commenced or prosecuted ... against a tortfeasor for a wrong which resulted in the death of the decedent." Md.Code (1974, 1991 Repl., 1997 Supp.) § 7–401(x) of the Estates and Trust Article. We aptly explained the differences between a survival action and a wrongful death action long ago, in *Stewart v. United Electric Light & Power Co.*, 104 Md. 332, 339–40, 65 A. 49, 52 (1906), as follows:

"Under the [wrongful death statute,] the damages recoverable are such as the equitable plaintiffs have sustained *by the death* of the party injured. Under [the survival statute] the damages recoverable are such as the deceased sustained in his lifetime and consequently exclude those which result to other persons from his death. Under the [wrongful death statute] the damages are apportioned by the jury among the equitable plaintiffs, and belong exclusively to them and form no part of the assets of the decedent's estate; under [the survival statute] the damages recovered go into the hands of the executor or administrator and constitute assets of the estate. Under [the wrongful death statute,] there is no survival of a cause of action—the cause of action is created by it and is a new cause of action and consequently one

which the deceased never had; under [the survival statute] there *is* a survival of a cause of action which the decedent had in his lifetime."

See *U.S. v. Streidel,* 329 Md. 533, 540, n. 5, 620 A.2d 905, 909, n. 5 (1993).

■ Therefore, in survival actions, recovery is limited to damages that the decedent could have recovered had the decedent survived and brought the action. We have also stated that "the damages are limited to compensation for the pain and suffering endured by the deceased, his loss of time and his expenses between the time of his injury and his death." *Stewart,* 104 Md. at 343, 65 A. at 53. *See Rhone v. Fisher,* 224 Md. 223, 229–30, 167 A.2d 773, 777 (1961), also noting that funeral expenses were first allowed under Ch. 127 of the Acts of 1937. *See also Tri–State Poultry Cooperative, Inc. v. Carey,* 190 Md. 116, 127, 57 A.2d 812, 817–18 (1948). Here, the decedent's estate recovered $2,000.00, the then-existing statutory-maximum for funeral expenses under Maryland Code (1974, 1988 Repl.Vol.) § 8–106(b) of the Estates and Trusts Article, and $1,000,000.00, which was reduced to the statutory-maximum of $350,000.00, for "pre-impact fright"— the emotional distress suffered by the decedent from the time he became aware of impending death until the fatal impact.

This Court has limited the compensability of emotional distress resulting from a wrongful act under two separate and distinct legal theories and lines of cases. Under one theory, through the "physical impact" and later the "physical injury" rule, we have attempted primarily to ensure that the emotional distress for which recovery is sought is genuine or "capable of objective determination." *Belcher v. T. Rowe Price Foundation,* 329 Md. 709, 745–46, 621 A.2d 872, 890 (1993); *Faya v. Almaraz,* 329 Md. 435, 458, 620 A.2d 327, 338 (1993); *Vance v. Vance,* 286 Md. 490, 500, 408 A.2d 728, 733 (1979); *Mahnke v. Moore,* 197 Md. 61, 69, 77 A.2d 923, 926 (1951); *Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182, 184 (1933); *Great Atlantic & Pacific Tea Co. v. Roch,* 160 Md. 189, 191, 153 A. 22, 23 (1931); *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, 16, 98

**476**

A. 239, 241 (1916); *Baltimore & O.R. Co. v. Harris*, 121 Md. 254, 268–69, 88 A. 282, 287–88 (1913); *Green v. T.A. Shoemaker & Co.*, 111 Md. 69, 77, 73 A. 688, 691 (1909). Under the other theory, we have limited recovery for negligently inflicted emotional injuries based on the rules concerning foreseeability of harm—an element of proximate cause. *See Dobbins v. Washington Suburban Sanitary Comm.*, 338 Md. 341, 348, 658 A.2d 675, 678 (1995); *Henley v. Prince George's County*, 305 Md. 320, 333, 503 A.2d 1333, 1340 (1986); *Zeigler v. F Street Corp.*, 248 Md. 223, 225–26, 235 A.2d 703, 705 (1967); *State v. Baltimore Transit Co.*, 197 Md. 528, 531, 80 A.2d 13, 14 (1951); *Baltimore City Passenger R.R. v. Kemp*, 61 Md. 74, 79–80 (1883). In the instant case, the petitioners raise issues that primarily concern the former.

Although this Court's cases have dealt extensively with the recovery of damages for emotional distress and mental anguish, we have yet to address the specific issue of whether damages for "pre-impact fright" suffered by a tort victim who dies upon impact are compensable in a survival action. We will first review case law from other jurisdictions and then discuss the development of this Court's jurisprudence concerning emotional distress and mental anguish damages.

### (a)

There is no uniformity in the manner in which courts treat pre-impact emotional distress or fright.[6] *Solomon v. Warren*,

---

**6.** One commentator has observed:

"Courts confronting claims for damages from pre-impact fear have divided on how the law should treat such claims. Some have held that pre-impact fear is mental anguish which is part of a larger, ongoing ordeal. These courts have allowed recovery for pre-impact fear as part of the award of damages for conscious pain and suffering. Other courts have viewed pre-impact fear as part of negligently-inflicted emotional distress. Jurisdictions generally allow recovery for negligently-inflicted emotional distress, but many restrict recovery to those cases in which there was a physical 'impact' upon the person of the plaintiff, or require that the mental duress be 'physically manifested' by some form of illness or injury."

*supra,* 540 F.2d 777 is one of the earlier cases addressing pre-impact fear. In that case, the Fifth Circuit Court of Appeals, purportedly applying Florida law, affirmed a judgment of $10,000 to the estates of two passengers killed in the crash of a small aircraft. The decedents, parents of the plaintiffs, were passengers on a small aircraft that ran out of gas while flying from Curacao, Netherlands Antilles to Bridgetown, Barbados. The pilot's last communication to traffic control indicated that he would attempt to "ditch" the aircraft near a merchant vessel. Neither the aircraft nor its occupants were found. The plaintiffs brought a survival action, *inter alia,* to recover damages for the "conscious pain and suffering" of their parents. Under Florida law, the plaintiffs had to prove that the decedents were conscious after injury and before death, so that they actually felt and appreciated the pain resulting from the injuries. *Solomon,* 540 F.2d at 792 (citing *Dobbs v. Griffith,* 70 So.2d 317 (Fla.1954)).

The trial court acknowledged that there was no evidence as to the length of time that the decedents suffered prior to death, or whether they were killed upon impact or survived for some time in the water. Nevertheless, the court allowed recovery for pre-impact fright, reasoning that:

> "it was 'convinced that both of the deceased knew of the impending crash landing at sea, knew of the immediate dangers involved and are certain to have experienced the most excruciating type of pain and suffering (the knowledge that one is about to die, leaving three cherished children alone).' "

*Id.* at 792.

The question on appeal was "[i]f impact to a person is present, may it follow as well as precede conscious pain and suffering used as the basis for recovery for such conscious pain and suffering in an action under [the Florida survivor statute]?" Affirming the trial court, the appellate court con-

---

Thomas D. Sydnor II, Note, *Damages for a Decedent's Pre–Impact Fear: An Element of Damages Under Alaska's Survivorship Statute,* 7 Alaska L.Rev. 351, 352 (1990).

cluded that, notwithstanding that the record did not reflect the length of time the decedents were aware of their impending deaths, "the inference is reasonable, almost compelling, that they appreciated that possibility at least from the time of the [last] radio transmission" indicating the pilot's intention to ditch the aircraft at sea. *Id.* 792–93. The court explained:

"While in the garden variety of claims under survival statutes, including the Florida Statute—fatal injuries sustained in automobile accidents and the like—the usual sequence is impact followed by pain and suffering, we are unable to discern any reason based on either law or logic for rejecting a claim because in this case as to at least part of the suffering, this sequence was reversed. We will not disallow the claims for this item of damages on that ground."

*Id.* at 793. One scholar has observed, "*Solomon* stands for the theory that in cases involving an actual impact, it is reasonable to offer the plaintiff or his representatives an opportunity to prove that he experienced pain and suffering prior to impact and to allow recovery for proof of such injury." Carol Tener, *Recovery Allowed for Pain and Suffering Experienced by Decedent Prior to Impact*, 4 W. St. L.Rev. 301, 310, n. 59 (1977).

One judge dissented. That judge argued that the record did not support a finding of whether death was instantaneous or not and, thus, "there can be no finding, one way or the other, about conscious pain and suffering after impact or about any physical suffering whatever." *Id.* at 796. Viewing pre-impact fear as a form of negligently-inflicted emotional distress, he wrote:

"Under Florida law, mental suffering is not recoverable in the absence of physical trauma occasioning it.... The majority professes that it has not departed from the impact rule but has only reversed a sequence to allow recovery when the impact *follows* the fear, as well as when the impact *precedes* the mental suffering. But to reverse the sequence is to abandon the rationale of the impact rule: any compensated mental pain and suffering must be caused by a physical impact.... It is not enough that some impact

accompany the mental suffering; the impact must cause the fears if they are to be compensable. Only then can courts measure mental duress by some means other than sheer speculation."

*Id.* at 796–97 (Gee, J., dissenting)(footnote omitted).

Despite Judge Gee's strong dissent, the Fifth Circuit Court of Appeals reached a similar result in cases applying Louisiana law. *See Haley v. Pan American World Airways,* 746 F.2d 311 (5th Cir.1984); *Pregeant v. Pan American World Airways,* 762 F.2d 1245, 1248–49 (5th Cir.1985); *In re Air Crash Disaster Near New Orleans, La.,* 789 F.2d 1092, 1098–99 (5th Cir.1986), *aff'd in relevant part,* 821 F.2d 1147 (5th Cir.1987) (en banc), *vacated on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989); *Brun–Jacobo v. Pan American World Airways, Inc.,* 847 F.2d 242 (5th Cir.1988).

In *Haley v. Pan American World Airways, supra,* 746 F.2d 311, the issue was whether Louisiana law allows recovery for "pre-impact apprehension in anticipation of imminent death." *Id.* at 314. There, the plaintiffs' son was killed, along with 138 other passengers, when a Boeing 727 "disintegrated upon impact with the ground." *Id.* at 313. The jury awarded the plaintiffs $15,000 for the mental anguish suffered by their son "prior to the first impact between the plane and the ground." *Id.* On appeal, Pan Am argued that Louisiana law did not allow recovery for pre-impact mental anguish, that the evidence introduced at trial was insufficient to support the jury's finding, and that the damages were excessive.

Noting that no Louisiana state case had "squarely confronted the issue of whether the fear a decedent experiences prior to both death *and* physical impact is a legally compensable element of damages," *id.* at 313, the court rejected Pan Am's argument, reasoning:

"While Louisiana courts then, have never expressly allowed recovery for pre-impact apprehension in anticipation of imminent death, they do allow recovery for fear during a negligently produced ordeal. We are not prepared to con-

clude that the Louisiana courts would sever such an 'ordeal' into before and after impact components."

*Id.* at 314. It concluded that "[a] broad compensatory principle lies behind Article 2315 of the Louisiana Civil Code," and that " 'fright, fear, or mental anguish while an ordeal is in progress is legally compensable.' " *Id.* at 314, 315. (quoting *Dawson v. James H. Stuart & Deaton, Inc.*, 437 So.2d 974, 976 (La.Ct.App.1983)). Furthermore, the court stated, "Louisiana jurisprudence . . . indicates that fright or mental anguish is a separate element of compensable damages, apart from oft-accompanying physical injury."*Id.* at 314. Regarding the sufficiency of the evidence, the court conceded that "[n]o one indeed will ever 'know' whether [the plaintiffs's son] was aware of his impending death, or whether he experienced the uncontrollable 'panic' of which [an expert] testified." *Id.* at 317. It stated, however, that the lack of direct evidence did not prevent a jury from reasonably inferring from the facts and expert testimony that the circumstances of the accident caused the plaintiffs' son to experience "mental anguish commonly associated with anticipation of one's death." *Id.* Thus, there was sufficient evidence to support the jury's verdict.

A similar decision was reached in *Furumizo v. United States*, 245 F.Supp. 981 (D.Hawai'i 1965), *aff'd*, 381 F.2d 965 (9th Cir.1967). There, the court upheld a $15,000 judgment in favor of the decedent's estate for the pain and suffering the decedent experienced during the brief descent before the plane in which he was a passenger crashed and he was burned to death.

Louisiana courts have also upheld pre-impact fear damage awards. *Thomas v. State Farm Insurance Co.*, 499 So.2d 562 (La.App. 2d Cir.1986), *writ denied*, 501 So.2d 213, 215 (La. 1987) and *Hood v. State*, 587 So.2d 755 (La.App. 2d Cir.1991), both automobile accident cases. In *Thomas*, Scott Thomas was driving an automobile in which his mother, who was seated in the front passenger seat, and his brother were passengers. Having seen an oncoming vehicle go out of control, Thomas forcefully applied his brakes and exclaimed, "Oh, no, mom!" When Thomas' mother saw the oncoming

vehicle, she grabbed his arm and "gasped," which, according to Thomas' testimony, was "a frequent thing that she did when she was frightened." *Thomas,* 499 So.2d at 567. Thomas' mother was killed. All of the evidence indicated that she was either killed or rendered unconscious upon impact or seconds later. The trial court awarded $15,000 for Thomas' mother's "pre-impact fear" in the survival action. The intermediate appellate court did not specifically address the issue of whether pre-impact fright is a compensable element of damages. In considering whether the award was excessive, the court opined that, "[b]ecause only a few seconds could possibly have elapsed between the time Mrs. Thomas realized what was happening and the time of impact, the trial judge abused his discretion in awarding $15,000 for pre-impact fear. The highest award within his discretion under these circumstances is $7,500.00." *Id.* at 567. Thus, inferentially, the court held that pre-impact fright is a compensable element of damages.

Similarly, the court, in *Hood,* let stand a $7,500 award for pre-impact fear of a 13 year-old student who died when the 15 year old driver lost control of the vehicle, which skidded 63 feet before rolling over and killing the two passengers. Although there was no testimony that the decedent had expressed fear prior to his death, the intermediate appellate court held that "it was reasonable for the trial court to conclude from the circumstances that [the decedent] was probably extremely frightened while being thrown around in the truck as it overturned several times and as he was ejected from the vehicle." 587 So.2d at 765.

The Texas courts, too, permit recovery of damages for pre-impact fright. In *Green v. Hale,* 590 S.W.2d 231 (Tex.Civ. App.1979), the Texas intermediate appellate court let stand a jury verdict awarding $5,000 for the mental anguish a 13 year-old boy suffered as the defendant negligently backed his truck over the boy's head, killing him instantly. The defendant argued that the jury's award was not supported by evidence that was "tested either by legal or factual criteria." The court concluded, however, that "the jury could draw a reasonable inference of terror and mental anguish which occupied the last

moments of [the decedent's] life for their finding and award."
*Id.* at 238. The court further observed: "Regardless of how
brief in duration, a tremendous amount of fear can be inferred
from the surrounding circumstances, and it was the duty of
the jury to translate that moment of mental anguish into an
appropriate monetary award." *Id.* at 238. *See also Jenkins
v. Hennigan,* 298 S.W.2d 905, 911 (Tex.Civ.App.1957, writ
ref'd n.r.e.)("Consciousness of approaching death is·a proper
element to be considered in evaluating mental suffering.").

A similar conclusion was reached in *Yowell v. Piper Air-
craft,* 703 S.W.2d 630 (Tex.1986), an airplane crash case, in
which the Texas Supreme Court, without extended discussion,
let stand a $500,000 jury award for "mental anguish the
decedents suffered from the time of the plane's break-up until
it hit the ground." 703 S.W.2d at 634. *See also Port Termi-
nal R.R. v. Sweet,* 640 S.W.2d 362, 366 (Tex.App.1982) (Under
FELA and relying on *Kozar v.Chesapeake & Ohio Ry. Co.,*
320 F.Supp. 335, (W.D.Mich.1970), *modified on other grounds,*
449 F.2d 1238 (6th Cir.1971), the court held widow could
recover for the decedent's mental anguish caused by the
terrifying realization that the train might hit him); *Sanchez v.
Schindler,* 651 S.W.2d 249, 253 (Tex.1983) (stating, in dicta,
that recovery for pure-emotional, non-pecuniary damages ab-
sent proof of physical injury or conduct is permitted); *but see
Air Florida v. Zondler,* 683 S.W.2d 769, 773 (Tex.App.1984)
("[I]n simple negligence case[,] proof of accompanying physical
injury is a necessary predicate to recover damages for mental
anguish").

In another Texas case, *Missouri Pac. R.R. v. Lane,* 720
S.W.2d 830 (Tex.Ct.App.1986), the decedent died on impact
when his truck stalled on the railroad tracks in the path of an
approaching freight train that was unable to stop. The rail-
road company argued that the jury erred in awarding dam-
ages for physical pain and mental anguish since the decedent
died instantly. Rejecting that argument and upholding a jury
verdict for $19,500.00, the court stated that "[s]uch an argu-
ment fails to consider the terror and consequent mental
anguish Lane suffered for the six to eight seconds while he

faced imminent death." *Id.* at 833. *Compare Larsen v. Delta Air Lines, Inc.,* 692 F.Supp. 714, (S.D.Tex.1988) (conflicting testimony regarding final minutes of flight was too speculative for the award of any pre-impact suffering that decedent may have experienced); *Douglass v. Delta Air Lines, Inc.,* 709 F.Supp. 745, 765–66 (W.D.Tex.1989)(acknowledging that *Yowell* permits recovery for pre-impact mental anguish, but finding no evidence to support such recovery).

In Georgia, in *Monk v. Dial,* 212 Ga.App. 362, 441 S.E.2d 857 (1994), a wrongful death action that is strikingly similar to the present case, the decedent died the moment his pick-up truck collided with defendant's tractor-trailer. The evidence revealed that the decedent's pick-up truck, though traveling at great speed, "veered shortly before the collision," *id.* at 859, providing support for the inference that the "decedent was aware of the impending crash." *Id.* While state law provided that "[t]he fright, shock, and mental suffering experienced by an individual due to wrongful acts of negligence will authorize a recovery where attended with physical injury,"*id.* (citing *Candler v. Smith,* 50 Ga.App. 667, 179 S.E. 395, 399 (1935)), the Court of Appeals of Georgia upholding recovery for pre-impact fright, reasoned that there was "no requirement that the physical injury precede the mental pain and suffering." *Id.*

In Michigan, pre-impact fright has been held to be compensable. In *Kozar v. Chesapeake & Ohio Ry. Co.,* 320 F.Supp. 335, 365–66 (W.D.Mich.1970), *modified on other grounds,* 449 F.2d 1238 (6th Cir.1971), a jury, having concluded that the decedent did not experience pain or suffering subsequent to being struck by a falling boxcar, awarded his estate $500 in damages for the emotional fright and suffering which the decedent endured between the time when he first realized the boxcar was falling and the time when it actually struck and killed him. On a motion for a new trial, the defendant argued that under the Federal Employers' Liability Act ("FELA") "pre-impact fright" was not compensable and that the jury's award of $500 was not supported by the evidence. Comparing *Smith v. United States,* 121 F.Supp. 778 (D.C.Tex.1953), *aff'd*

*as to other issues,* 220 F.2d 548 (5th Cir.1955) [7], where the court found damages for pre-impact fright to be "speculative," with *Wiggins v. Lane & Co.,* 298 F.Supp. 194 (E.D.La.1969) [8], where such damages were allowed, the court upheld the pre-impact fright award.

---

**7.** In *Smith v. United States,* 121 F.Supp. 778 (D.C.Tex.1953), *aff'd as to other issues,* 220 F.2d 548 (5th Cir.1955), the federal district court found that the emotional distress suffered by the decedent was not compensable, as he experienced no physical injury before he fell from a 30 foot rope ladder, crashing into the dock below and then drowning seconds later. It was disputed whether decedent died from striking his head on the dock or from drowning. The plaintiff argued, the decedent "struck his head against the dock ..., that as a result thereof he suffered serious and painful injuries and then and there recognized the imminence of his falling into the water and drowning, all of which caused him extreme pain, mental anguish and untold misery." *Smith,* 121 F.Supp. at 784. The trial court, as the trier of fact, disagreed, concluding:

"The record shows that Smith is dead as a result of his fall with the ladder. But it would be a mere guess to say when he died, or whether his death was caused from striking the dock or drowning or both. If the time of his death was known and shown, there would I take it be both mental and physical suffering by him from the time he began to fall until his death. But as the record stands, [the] only certain period of mental and physical suffering is from the time he began to fall until he struck the dock, and the amount of damages, if any, recoverable therefor would be a mere guess. I do not think [plaintiff], under this record is entitled to recover therefor."

121 F.Supp. at 784–85.

**8.** In *Wiggins v. Lane & Co.,* 298 F.Supp. 194 (E.D.La.1969), the decedent was working on a pile driving rig fifty feet above the deck of a barge. He was holding a rope when he was struck in the chest by a piling being raised for placement and fell on the deck. Medical experts testified that the decedent probably died the instant he struck the deck. No expert opinion was offered, however, as to whether the decedent was conscious during the fall. The jury found that the decedent experienced " 'conscious pain from the time of (his) initial injury to the time of death,' " *id.* at 194, and awarded $10,000 for the decedent's pain and suffering under the survivorship section of FELA. *Id.* at 195. Agreeing with the jury's verdict, the trial court reasoned:

"If a seaman fell from the mast into the sea, was rescued a few seconds later after almost drowning, was given artificial respiration, and brought back to consciousness, it would appear certain that he could recover for the fright suffered in the moments when he thought he was falling to his death. The survivorship statute draws no distinction that would eliminate the cause of action because the decedent's suffering was in fact brief."

*Id.* at 196.

"The testimony evidences that [the decedent] was aware of the falling boxcar, that he was aware he was in or near a position of danger and that he attempted to run from beneath the boxcar in a bent over position so as to avoid being struck until the last possible moment.

"The jury certainly could have reasonably determined from this evidence that [the decedent] sustained emotional injuries caused by a terrifying realization that he was about to die. Furthermore, in light of the testimony which evidenced that [the decedent] took his family obligations seriously, the jury also could have reasonably inferred that [the decedent] suffered horrendous emotional injuries due to an immediate appreciation of the tragedy that would befall his family if he were killed."

*Kozar,* 320 F.Supp. at 366.

More than a decade after the *Kozar* decision, the United States District Court for the Eastern District of Michigan, in *Platt v. McDonnell Douglas Corp.,* 554 F.Supp. 360 (E.D.Mich.1983), reached a similar conclusion. *Platt* arose out of the crash of American Airlines Flight 191 at Chicago O'Hare on May 25, 1979. The plane, a DC–10, was airborne for less than one minute before its left engine and a portion of its left wing broke away. The plane's flight pattern did not become alarming until three seconds before the crash. All of the passengers aboard died when the plane crashed.

Reviewing a defense motion to dismiss the plaintiff's claims for pre-impact fright and terror under Michigan's wrongful death statute, the court found that Michigan state law had long supported "the notion that recovery may be sought and awarded for not only 'bodily pain, but mental suffering, anxiety, suspense and fright which might be treated as elements of the injury.'" *Id.* at 363 (quoting *Sherwood v. Ry. Co.,* 82 Mich. 374, 46 N.W. 773, 776, (1890)); *see* cases cited therein. The court was unpersuaded by the defense argument that the "pain and suffering" for which the wrongful death statute provides recovery must occur during "the period intervening between the time of the inflicting of such injuries and ...

death." *Id.* Also unpersuasive to the court was the argument that there is "no common law right of recovery in the survivors of a person wrongfully killed." *Id.* To this argument, the court responded:

> "We are not persuaded that the common law in Michigan does not allow recovery for the pre-impact fright and terror, in which case, under the Wrongful Death Act, plaintiffs may recover for such claims that the decedent would have had should she have survived."

*Id.*

The same airplane crash has been the subject of cases involving pre-impact fright in the federal district court for the Southern District of New York and in the Second Circuit Court of Appeals. In *Malacynski v. McDonnell Douglas Corp.*, 565 F.Supp. 105 (S.D.N.Y.1983), the court found that a decedent's widower could recover damages in a wrongful death action for decedent's "mental and emotional trauma [experienced] during the period when it was apparent that the aircraft was going to crash." *Id.* at 106. The defendant filed both a motion to dismiss and a motion for summary judgment. In the motion to dismiss, the defendant argued that "New York courts do not recognize a cause of action for pain and suffering as a result of a decedent's knowledge of impending death." The federal court disagreed, explaining:

> "The Court cannot agree with [defendant's] interpretation of New York law. At least one state court has indicated that the claim is proper where the plaintiff can produce evidence from which a jury could infer that the decedent was aware of the danger and suffered from pre-impact terror. *See Anderson v. Rowe*, 73 A.D.2d 1030, 425 N.Y.S.2d 180, 181 (4th Dept.1980). Moreover, the Fourth Department's recognition of the pre-impact mental anguish claim in *Anderson* is the logical extension of two well-settled principles of New York law. First, the New York Court of Appeals has held that a plaintiff may recover damages for mental trauma induced by fear for one's physical well-being, regardless of whether physical injuries actually were incurred.... Second, New York State courts clearly allow

claims for post-impact pain and suffering in a wrongful death action where the plaintiff can establish that the decedent actually regained consciousness after impact.

\* \* \*

"Given this willingness on the part of New York's courts to recognize, in the context of a wrongful death action, a separate and independent claim for post-impact conscious pain and suffering, it would be illogical for this Court to conclude that the state courts would hold that the pre-impact claim is merged into the main action for wrongful death."

*Id.* at 106 (citations omitted).

In the motion for summary judgment, the defense challenged the sufficiency of the evidence. It contended that the plaintiff could not "adduce sufficient proof to justify an inference that [the decedent] experienced fear and/or was aware that she faced probable death prior to the aircraft's crash." *Id.* at 107. The court denied the defendant's motion for summary judgment, observing that the plaintiff intended to produce testimony at trial of an eyewitness to the crash as well as evidence from the National Transportation Safety Board, and the decedent's seat assignment on the plane. That evidence, the court concluded, may support an inference that the decedent knew she was in imminent danger and should therefore recover for pre-impact fright. *Id.*

Similarly, in *Shu–Tao Lin v. McDonnell Douglas Corp.,* 574 F.Supp. 1407 (S.D.N.Y.1983), *aff'd in part and rev'd in part,* 742 F.2d 45 (2d Cir.1984), both the trial court and the appellate court concluded not only that New York law permitted recovery for a decedent's pre-impact fear or mental anguish, but also that the plaintiff had presented sufficient evidence to justify a $10,000.00 award for damages. The trial court observed:

"New York provides a cause of action for the pain and suffering of a decedent before his death. In several cases it has been held that the decedent's estate may recover for the

decedent's pain and suffering endured *after* the injury that led to his death. From this proposition, it is only a short step to the allowing of damages for the decedent's pain and suffering *before* the mortal blow and resulting from the apprehension of impending death."

*Shu–Tao Lin,* 574 F.Supp. at 1416 (citations omitted). Addressing the same point, the appellate court reasoned:

"We conclude that New York law does permit recovery for a decedent's pre-impact fear for substantially the reasons set forth in [the district court's] opinion. A decedent's representative unquestionably may recover the pain and suffering experienced in a brief interval between injury and death.... We see no intrinsic or logical barrier to recovery for the fear experienced during a period which the decedent is uninjured but aware of an impending death."

*Shu–Tao Lin,* 742 F.2d at 53.

With respect to the sufficiency of the evidence needed to establish pre-impact fright, the trial court observed (574 F.Supp. at 1417):

"Since there were no survivors of the crash, there could be no direct evidence of Dr. Lin's or other passengers' pain and suffering before impact. However, given that Dr. Lin was assigned to a window seat on the plaintiff's left side and given the reasonable inference that he was in his seat during the first 30 seconds of the plane's take-off, the jury might reasonably have inferred that Dr. Lin saw the engine and other pieces break away from the plane. Even if he did not see the damage, the jury might have still reasonably inferred that the sudden change in the plane's [altitude]— from steep ascent to sharp banking and nose down descent-notified Dr. Lin of the impending disaster and caused him pain and suffering in the seconds before the crash."

Agreeing with the trial court, the appellate court held that the issue of Dr. Lin's pre-impact pain and suffering was a jury question and that its verdict was not excessive. 742 F.2d at 53.

In *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202 (2d Cir.1984), also arising out of the May 25, 1979 plane crash, however, where the decedent was. (1) seated on the right side of the plane (rather than the left side of the plane as in *Shu–Tao Lin* ), (2) unable to see the engine, (3) not alerted of the danger before impact, and (4) the plaintiff offered no proof that the decedent experienced conscious pain and suffering, a jury verdict awarding damages for pre-impact fear was reversed. The court stated that, although direct evidence, such as eyewitness testimony was not necessary, some evidence from which a reasonable inference could be drawn that the decedent experienced some pre-impact emotional or mental disturbance was necessary. The court said:

"There is no evidence permitting an inference that Shatkin was aware that the left engine had been lost on take-off; since he was seated on the right side of the wide-bodied plane, it would be sheer speculation to infer that he knew of the incident. There was no evidence that the pilot or anyone else called the danger to the passengers' attention. As far as the record is concerned Shatkin could have dozed off in his seat."

*Shatkin*, 727 F.2d at 206–07.[9]  *See Feldman v. Allegheny Airlines, Inc.*, 382 F.Supp. 1271, 1300–01 (D.Conn.1974) (without deciding the compensability of pre-impact fright under Connecticut law, the court found that—a survivor's testimony that he was aware of the impending crash was not evidence that a decedent passenger was similarly aware).

New York state courts have also considered, and upheld, awards for pre-impact fear damages. In *Lang v. Bouju*, 245 A.D.2d 1000, 667 N.Y.S.2d 440, 441–42 (3 Dept.1997), a motorcyclist collided with a truck and died on impact from a broken

---

**9.** Reviewing *Shu–Tao Lin* and *Shatkin,* one scholar remarked: "It is amazing that the same federal court could come to such differing conclusions in these cases ostensibly because of where the decedent was seated. This underscores the suspicion and hesitancy with which courts view evidence of pre-impact mental anguish." Louisa Ann Collins, *Pre- and Post-Impact Pain and Suffering and Mental Anguish in Aviation Accidents,* 59 J. Air L. & Com. 403, 425 (1994).

neck. Affirming the trial court's refusal to set aside a $239,-125 award for the decedent's "pre-impact terror," the appellate court concluded that a reasonable fact-finder could infer from the facts that the decedent applied his brakes when he saw the approaching truck and was aware of imminent danger during the approximately five seconds preceding the deadly impact. *Id.* at 441; *see also* cases therein cited. It held, however, that, "[g]iven the extremely short period of time during which [the decedent] could have experienced this emotional injury," *id.* at 442, the verdict was excessive and reduced it to $100,000. *Accord Donofrio v. Montalbano*, 240 A.D.2d 617, 659 N.Y.S.2d 484, 485 (2 Dept.1997) ("the duration within which the decedent could have experienced any pre-impact terror was limited to only several seconds, which warrants, at best, a minimal award"). *See also Stein v. Lebowitz–Pine View Hotel, Inc.*, 111 A.D.2d 572, 489 N.Y.S.2d 635, 639 (3 Dept.1985) (upheld $50,000 for conscious pain and suffering of decedent who drowned and, according to plaintiff's expert, may have lived four minutes and struggled prior to death); *Anderson v. Rowe*, 73 A.D.2d 1030, 425 N.Y.S.2d 180, 181 (4 Dept.1980) ("plaintiff could not show that there was any evidence from which one might imply that the decedents were aware of any danger and suffered from pre-impact terror").

In *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989), the Nebraska Supreme Court squarely confronted the issue "whether a decedent's estate may recover for the mental anguish a decedent consciously suffers by the apprehension and fear of impending death prior to sustaining fatal injury." *Id.* at 30. In that case, a collision occurred between an automobile operated by the defendant and a motorcycle being operated by the decedent, with a passenger. After the decedent and his friend left the scene of a fight, the defendant, in an apparent effort at retaliation, followed at speeds of up to 85 miles per hour. At one point, the defendant was from 1 to 2 feet behind the decedent, backed off and then sped up, striking the decedent's motorcycle. According to the accident reconstructionist who testified at trial, the impact caused the two vehicles to lock and travel together for about 268 feet over a

period of approximately five seconds. The decedent's motor-cycle then struck a light post, and he fell under the defendant's automobile and was crushed; his death was instantaneous. A psychiatrist testified that the decedent "understood he was going to be run down from the moment [defendant's] automobile made contact with the motorcycle and that [the decedent] 'must have been absolutely terrified,' knowing or thinking that he was going to die for whatever period of time intervened between the two vehicles' coming together and death." *Nelson,* 434 N.W.2d at 27.

At trial, the defendant admitted that his negligence proximately caused the decedent's death and the jury returned a plaintiff's verdict for more than $37,000. None of the award was for pre-impact fear, the trial court having refused to permit the decedent's personal representative to adduce evidence on that issue. Agreeing that the decedent's estate was "entitled to recover in the wrongful death action for the mental anguish decedent Nelson experienced prior to his death," *id.* at 853, 434 N.W.2d at 29, the Nebraska Supreme Court reversed. After pointing out that it has "long permitted a decedent's estate to recover for the conscious physical pain and suffering the decedent endured after a negligently inflicted injury resulting in death," *id.* at 854–55, 434 N.W.2d at 30 (citation omitted), and, also permitted recovery for post-injury mental anguish as an element of damages, the court opined:

> "[W]e are persuaded that there exists no sound legal or logical distinction between permitting a decedent's estate to recover as an element of damages for a decedent's conscious postinjury pain and suffering and mental anguish and permitting such an estate to recover for the conscious prefatal-injury mental anguish resulting from the apprehension and fear of impending death."

*Id.* at 857, 434 N.W.2d at 31. With respect to the sufficiency of the evidence of "conscious prefatal-injury," the court stated:

> "While it is true that in the present case there is no evidence that decedent Nelson said anything prior to his death revealing an awareness of his impending death, the

personal representative's offers of proof nonetheless provide a basis upon which the jury certainly need not, but could, if it wished, find that decedent Nelson apprehended and feared his impending death during the 5 seconds his motorcycle traveled 268 feet locked with [defendant] Dolan's automobile before he was crushed and thus killed."

*Id.* at 859, 434 N.W.2d at 32.

On the other side of the ledger, there are jurisdictions that deny recovery for preimpact fright, mental anguish and emotional distress.

In *Fogarty v. Campbell 66 Express, Inc.*, 640 F.Supp. 953 (D.Kan.1986), both the decedent and the defendant were driving tractor-trailers during the late evening; the decedent was driving on interstate highway 59 in a northerly direction, and the defendant was driving on interstate highway 166 in an easterly direction. The two vehicles collided at the intersection of those two highways and spun into different directions. The defendant was injured, but he survived. The decedent was not as fortunate. His truck broke through a six-foot concrete wall and left fifty-six feet of skid marks. The decedent was killed when the load of steel he was hauling penetrated his cab, crushing his head and thorax. Death was "immediate."

The plaintiff filed both a survival action and a wrongful death action, alleging that the defendant negligently failed to obey a stop sign, and operated the tractor-trailer at an excessive speed while fatigued. The defendant admitted that, because it was nighttime and she was unfamiliar with the intersection, she failed to see the stop sign and therefore did not stop before entering the intersection. The plaintiff, conceding that the decedent's "immediate" death ruled out any recovery for physical pain and suffering, sought damages for the decedent's pre-impact emotional distress.

The court recognized that the long-standing rule in Kansas governing recovery for emotional distress in negligence, rather than intentional or "wanton," cases, requires an accompanying physical injury. *Fogarty*, 640 F.Supp. at 956 (citing

*Whitsel v. Watts*, 98 Kan. 508, 509, 159 P. 401 (1916); *Hoard v. Shawnee Mission Medical Ctr.*, 233 Kan. 267, 274, 662 P.2d 1214, 1219-20 (1983)). The plaintiff argued that the decedent's pre-impact emotional distress was, in fact, accompanied by physical injury—the decedent's death. "In other words, plaintiff construe[d] 'accompanied by' to include instances in which physical injury occurs *after,* yet not as a result of emotional distress." *Fogarty*, 640 F.Supp. at 956. Although the court found that the rule did not actually bar plaintiff's interpretation, it found no Kansas decisions involving "subsequent physical injury not actually caused by the emotional distress;" instead, all the cases involved either prior or contemporaneous physical injury. Thus, the court concluded that "physical injury 'accompanies' emotional distress only if (1) the two intermingle or (2) the physical injury actually *causes* emotional distress." *Id.* at 957 (citing *Clemm v. Atchison Topeka & Santa Fe Railway*, 126 Kan. 181, 184, 268 P. 103, 105 (1928))("Where the mental suffering is an element of physical pain, or the natural and proximate result of the physical injury, it forms the basis of recovery.").

Concerned about the apparent rigidity of the Kansas rule, however, the court commented:

"Our conclusion that the Kansas Supreme Court would refuse to permit recovery for negligently induced, pre-impact emotional distress not itself resulting in physical injury should not be read as an endorsement of the current legal doctrine in this area. A review of the case law in this and other jurisdictions reveals considerable disagreement, as well as more than a little judicial practice of medicine. By this we mean that the general rule against recovery for emotional distress (and, indeed, most of the exceptions thereto) was developed before medical science had advanced to its present state. Because earlier medical experts were less able to diagnose purely mental or emotional distress ..., courts attempted to sort out 'fraudulent' claims by imposing the rather arbitrary 'impact rule.' Today it is not at all clear that a physical impact is more likely to result in genuine emotional distress than are many non-impact situa-

tions. For instance, the fear of fatal collision seems far more likely to create intense emotional distress than is a merely incidental physical contact. The effect of the rule, however, is to bar a truly distressed ... plaintiff from attempting to convince a jury that his complaints are genuine."

*Id.* at 962. As a solution, the court suggested that "[a] negligent defendant should be liable for any provable emotional distress he or she causes a plaintiff—regardless of whether physical injury results." *Id.* at 963. "Given the plaintiff's burden of proving such a claim, as well as the recent advances in diagnostic techniques, a rule denying all recovery to genuinely distressed plaintiff seems both illogical and unenlightened." *Id.* *Accord Cochrane v. Schneider National Carriers, Inc.*, 968 F.Supp. 613 (D.Kan.1997). In the final analysis, however, the court concluded that the Kansas Supreme Court would likely adhere to the existing rule prohibiting the recovery of damages for pre-impact fright unaccompanied by either prior or contemporaneous physical injury. *See St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043, 1050 (1989), in which the Kansas Supreme Court found it was "not necessary to test the accuracy of [the *Fogarty* decision's] prediction."

*In re Air Crash Disaster Near Chicago, Ill., etc.*, 507 F.Supp. 21 (N.D.Ill.1980), the federal district court there ruled that pre-impact fright damages were not recoverable under Illinois law. This case involved another of the wrongful death and survival actions arising out of the May 25, 1979 crash of American Airlines Flight 191. *Id.* The plaintiff, in that case, the mother of one of the passengers killed in the crash, sought damages for any terror or fright the decedent experienced as the plane began its final "roll" toward the ground. The court held that, under Illinois law, which allows recovery for emotional distress that is "directly connected with a contemporaneous bodily injury," the plaintiff was entitled to recover only for her daughter's pain and suffering endured *after* the crash. *Id.* at 23 (citing *Carlinville National Bank v. Rhoads*, 63 Ill.App.3d 502, 20 Ill.Dec. 386, 380 N.E.2d 63 (4th Dist.1978) and other case therein cited). The only rationale the court

offered in support of the Illinois rule was that "to reverse the sequence is to abandon the rationale of the impact rule: any compensated mental pain and suffering must be caused by a physical impact," the same argument made by the dissenting judge in *Solomon v. Warren, supra,* 540 F.2d at 797. In any event, the court explained:

> "No Illinois court has directly discussed this issue. Given the Illinois courts' previous refusal to recognize claims for damages based on the plaintiff's fear or apprehension of danger, however, we believe that at present Illinois would not allow the plaintiff to maintain a claim for her daughter's alleged fright and terror prior to the crash. For this reason, insofar as the plaintiff seeks damages for conscious mental pain and suffering preceding any physical injury, her claim is stricken."

*In re Crash Disaster Near Chicago,* 507 F.Supp. at 24. *See also In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994,* 926 F.Supp. 736, 742 (E.D.Ill.1996)("Under Illinois law, actionable mental anguish must be caused by bodily injury; accordingly, pre-impact fright and terror has been held to be non-actionable under Illinois law.").

In *Nye v. Commonwealth,* 331 Pa.Super. 209, 480 A.2d 318 (1984), the decedents were killed when the defendant's reckless driving forced their car off the road and onto a raised metal barrier that divided the state highway. As the driver tried to recover control of her car, the car collided head-on with an automobile on the other side of the road. The trial court only instructed the jury as to recovery for post-impact pain and suffering, not preimpact emotional distress. After recovering a favorable verdict at trial, the plaintiff appealed, arguing, *inter alia,* that the court should have charged the jury that the decedent's estate could recover for emotional distress caused by her knowledge of impending death. The plaintiff contended that "the jury could properly award damages for pain and suffering if it believed [the decedent] was aware of her impending death as she struggled to bring her car under control." *Nye,* 480 A.2d at 321.

The intermediate appellate court noted: "The law in Pennsylvania is clear that where a decedent is killed instantaneously, there can be no recovery for pain and suffering in a survival action." *Id.* at 321 (citing *Slavin v. Gardner*, 274 Pa.Super. 192, 418 A.2d 361 (1979); *Fisher v. Dye*, 386 Pa. 141, 125 A.2d 472 (1956)). "This rule," the court explained, "is obviously based on the proposition that where death is instantaneous the decedent experiences neither pain nor suffering and therefore an award of damages to compensate for pain and suffering would be unwarranted." *Id.* at 321. Thus, the court held, recovery in a survival action is limited to "damages for pain and suffering and emotional distress occurring after the time of injury." *Id.* at 321. Furthermore, the court opined:

"Even assuming *arguendo* that pre-impact fright is a recoverable element of damages in this jurisdiction, it is clear that [plaintiff] neither pleaded nor proved a case supporting such an award.... If [decedent] had somehow avoided the accident, she could recover damages based on her emotional distress or 'fright' only if she averred and proved that her mental or emotional distress resulted in some type of physical manifestation or harm. *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981)."

*Id.* at 215, 480 A.2d at 322. *But see Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), where the Supreme Court of Pennsylvania discussed its abandonment of the "impact rule" in favor of the "zone of danger" theory, which effectively allows recovery for emotional distress in the absence of physical injury.

In *Gage v. City of Westfield,* 26 Mass.App.Ct. 681, 532 N.E.2d 62 (1988), an action for wrongful death and conscious pain and suffering, two youths were struck by a freight train while walking across the train tracks. Although they acknowledged that the general rule was that damages for conscious pain and suffering are recoverable for suffering which "follows the injury but precedes death," the plaintiffs nevertheless argued that "the rule is not so inflexible as to foreclose recovery for conscious pain and suffering which precedes an injury but is as inextricably connected to a real injury as the

sudden fear of almost certain impending death was in this case." *Id.* at 71(citing *Bullard v. Central Vt. Ry.*, 565 F.2d 193, 197 (1st Cir.1977)) ("fright just before the accident, when collision was imminent and he jumped" was compensable mental injury); Compare *Kennedy v. Standard Sugar Ref.*, 125 Mass. 90, 92 (1878)(mental distress experienced during a twenty-foot fall before hitting the ground might be compensable). The court held:

> "The plaintiffs' contention has some logical appeal but we are not persuaded by it. It is not at all uncommon for victims of sudden, fatal accidents to experience momentary fright prior to impact such as the plaintiffs' decedents experienced. Yet the relevant period for purposes of measuring compensation for conscious pain and suffering has consistently been defined in our appellate decisions as commencing with the impact of the fatal injury. Assuming that limitation to have been intentional, we hesitate to extend the right to recover for conscious pain and suffering to pre-impact fright."

532 N.E.2d at 71.

We find the cases upholding the recoverability of pre-impact fright as an element of damages are more persuasive and compatible with Maryland law.

### (b)

Maryland jurisprudence has long evolved from the strict common law doctrine requiring an individual to suffer a physical impact or injury that *results* in emotional distress, in order for the emotional distress to be compensable. Since 1909, this Court, in *Green v. T.A. Shoemaker & Co.*, 111 Md. 69, 73 A. 688 (1909), has rejected the "physical impact" doctrine and held that emotional distress or fright that *results* in physical injury or any objective manifestation is a compensable injury. In *Green,* the plaintiff suffered physical and emotional injuries from the defendant's persistent blasting, for several months, of large quantities of rock near the plaintiff's residence. Large rocks and stones crashed into the plaintiff's home, destroying doors, windows, porches and the roof, and cracking

the walls and ceilings. On several occasions, the plaintiff was struck and wounded by falling plaster and debris, and was "violently shaken and jarred, whereby she was greatly injured physically ... and her health has been greatly damaged and shattered, and her nervous system disordered." *Green*, 111 Md. at 72, 73 A. at 689. On one occasion, a twenty-two pound rock burst through the roof and ceiling of the plaintiff's bedroom and landed on her bed, breaking the bed's slats and rollers. After that incident, plaintiff and her family "were kept in continual fear and jeopardy of their lives." The plaintiff's family doctor testified that the plaintiff's development of "nervous prostration" was directly attributable to the shock of the frequent blasting. The trial court granted the defendant's motion to strike all evidence bearing on the plaintiff's nervous condition and the resultant physical injury on the ground that there was no evidence of any *preceding* physical impact or injury to the plaintiff.

The issue before this Court was "whether a cause of action will lie for actual physical injuries *resulting from* fright and nervous shock caused by the wrongful acts of another." *Id.* at 77, 73 A. at 691. We observed that most courts held that "mere fright, without any physical injury resulting therefrom, cannot form the basis of a cause of action." *Id.* "This is so," we noted, "because mere fright is easily simulated, and because there is no practical standard for measuring the suffering occasioned thereby, or of testing the truth of the claims of the person as to the results of the fright." *Id.* We explained:

"The grounds upon which those courts have proceeded which deny such right are twofold: '(1) That physical injury produced by mere fright caused by a wrongful act is not the proximate result of the act; and (2) that, upon the ground of expediency, the right should be denied because of the danger of opening the door to fictitious litigation, and the impossibility of estimating damages.' *Huston v. Freemansburg*, 3 L.R.A. (N.S.) 50, Editor's note. As to the first of these grounds, this court has laid down in clear language the true doctrine upon this question in *Balt. City Passenger Railway Co. v. Kemp*, 61 Md. 74 [, 80–81 (1883) ]. In that

case the court, speaking through Judge Alvey, said: 'It is not simply because the relation of cause and effect may be somewhat involved in obscurity, and therefore difficult to trace, that the principle obtains that only the natural and proximate results of a wrongful act are to be regarded. *It is only where there may be a more direct and immediate sufficient cause of the effect complained of that the more remote cause will not be charged with the effect. If a given [result] can be directly traced to a particular cause as the natural and proximate effect, why should not such effect be regarded by the law, even though such cause may not always, and under all conditions of things, produce like results?* It is the common observation of all that the effects of personal physical injuries depend much upon the peculiar conditions and tendencies of the person injured, and what may produce but slight and comparatively uninjurious consequences in one case may produce consequences of the most serious and distressing character in another. * * * Hence the general rule is in actions of tort like the present that the wrongdoer is liable for all the direct injury resulting from his wrongful act, and that, too, although the extent or special nature of the resulting injury could not, with certainty, have been foreseen or contemplated as the probable result of the act done.'

* * *

"We now come to the question of expediency. . . . The argument from mere expediency cannot commend itself to a court of justice resulting in the denial of a logical legal right and remedy in all cases because in some a fictitious injury may be urged as a real one. The apparent strength of the theory of expediency lies in the fact that nervous disturbances and injuries are sometimes more imaginary than real, and are sometimes feigned, but *this reasoning loses sight of the equally obvious fact that a nervous injury arising from actual physical impact is as likely to be imagined as one resulting from fright without physical impact, and that the former is as capable of simulation as the latter.* It must be conceded that the numerical weight

of authority supports the general rule that there can be no recovery for nervous affections unaccompanied by contemporaneous physical injury, but the sounder view in our opinion is that there are exceptions to this rule, and that *where the wrongful act complained of is the proximate cause of the injury within the principles announced in Kemp's Case, supra, and where the injury ought in the light of all the circumstances to have been contemplated as a natural and probable consequence thereof, the case falls within the exception and should be left to the jury."*

*Id.* at 77–78, 73 A. at 691 (emphasis added). Thus, we concluded: "[W]hen it is shown that a material physical injury has resulted from fright caused by a wrongful act, and especially, as in this case, from a constant repetition of wrongful acts, in their nature calculated to cause constant alarm and terror, it is difficult, if not impossible, to perceive any sound reason for denying a right of action in law for such physical injury." *Id.* at 77, 73 A. at 691.

Our holding in *Green*—that damages may be recovered for physical injuries caused by or resulting from fright or shock absent physical impact—was reaffirmed in subsequent cases. *See Baltimore & O.R. Co. v. Harris*, 121 Md. 254, 88 A. 282 (1913), where a plaintiff was permitted to recover for injury which resulted from the shock and fright she experienced from the whistle of a steam locomotive; *Patapsco Loan Co. v. Hobbs*, 129 Md. 9, 98 A. 239 (1916), where a debt collector's constant harassment caused plaintiff mental anguish which resulted in convulsions; and *Great Atlantic & Pacific Tea Co. v. Roch*, 160 Md. 189, 153 A. 22 (1931), where a store manager sent a package containing a dead rat, rather than a loaf of bread, causing the plaintiff to experience mental anguish and subsequent physical injuries.

In *Bowman v. Williams*, 164 Md. 397, 165 A. 182 (1933), the plaintiff, while standing at his dining room window facing the street, witnessed a large truck go out of control and crash directly below him, into his basement, where his two boys were. The plaintiff did not sustain any physical impact whatsoever; however, his fright and his alarm for the safety of his

sons resulted in such a shock to his nervous system that he collapsed and developed a weak and hysterical condition for several weeks. The defendant argued to this Court that "there can be no recovery for physical injuries resulting from fright caused by a wrongdoer unless the fright was for the injured party's own safety." *Bowman,* 164 Md. at 400, 165 A. at 183. To this, we said that "[i]t is a fundamental principle that where legal injury has resulted, without any break in the chain of causation, from a wrong, a right of action for damages arises." *Id.* at 402, 165 A. at 184. We further stated:

> "[T]he cause of the fright was the negligent act or omission of the defendants in permitting the truck to get out of control or be driven so as to run into the house of the plaintiff. This was a breach of duty that the defendants owed to the plaintiff. The physical damages which the plaintiff sustained naturally, directly, and reasonably arose from this negligent act or omission, without the intervention of any other cause, and so the causal connection between the injury and the occurrence is established."

*Id.* Along the same line of reasoning, we stated that there was no reason to deny plaintiff the right to recover because he sustained injury that might have arisen from fear for the safety of his children rather than his own. We expounded:

> "Here there was imminent danger of physical contact that confronted the plaintiff, who had visible reason to apprehend that the impending peril caused by the negligent act or omission of the defendants' servants with respect to their duty to him would not only happen but would also crush and damage the building and inflict the threatened physical injury upon his children in the basement and himself in the dining room of the house. There was no basis to differentiate the fear caused the plaintiff for himself and for his children, because there is no possibility of division of an emotion which was instantly evoked by the common and simultaneous danger of the three."

*Id.*

Regarding the requisite "physical injury" to sustain a recovery of damages for emotional injury, we concluded that it must

be "clearly apparent and substantial physical injury manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." *Id.* at 404, 165 A. at 184. *See also Mahnke v. Moore,* 197 Md. 61, 69, 77 A.2d 923, 926 (1951). This point was clarified in *Vance v. Vance,* 286 Md. 490, 408 A.2d 728 (1979), where the plaintiff was permitted to recover, without supporting expert medical testimony, for the emotional distress caused by her discovery that her husband, the defendant, had misrepresented the legality of their twenty-year marriage. We explained:

"We think it clear that *Bowman* provides that the requisite 'physical injury' resulting from emotional distress may be proved in one of four ways. It appears that these alternatives were formulated with the overall purpose in mind of requiring objective evidence to guard against feigned claims. The first three categories pertain to manifestations of a physical injury through evidence of an external condition or by symptoms of a pathological or physiological state. [In the fourth category] [p]roof of a 'physical injury' is also permitted by evidence indicative of a 'mental state,' a conclusion consistent with the holdings in the *Green, Bowman* and *Roch* cases. In the context of the *Bowman* rule, therefore, the term 'physical' is not used in its ordinary dictionary sense. Instead, it is used to represent that the injury for which recovery is sought is *capable of objective determination.*"

*Vance,* 286 Md. at 500, 408 A.2d at 733 (footnote omitted)(emphasis supplied).

We further clarified the "physical injury" requirement in *Faya v. Almaraz,* 329 Md. 435, 620 A.2d 327 (1993) and *Belcher v. T Rowe Price,* 329 Md. 709, 621 A.2d 872 (1993). In *Faya,* the plaintiffs were fearful of acquiring the AIDS virus from a surgeon who had operated on them without disclosing that he was HIV-positive. The plaintiffs "allege[d] that their fear and mental and emotional distress are accompanied by headache, sleeplessness, and the physical and financial sting of blood tests for the AIDS virus." 329 Md. at 459, 620 A.2d at 338. We held that "nervous disturbance may constitute suf-

fering of the body or of the mind." *Id.* at 456, 620 A.2d at 337. *See also Resavage v. Davies,* 199 Md. 479, 480–81, 86 A.2d 879, 880 (1952). We held also that, under *Vance* and its precursors, plaintiffs "may recover for these injuries to the extent that they can objectively demonstrate their existence." *Id.* at 459, 620 A.2d at 338–39. We cautioned, however, that "such damages must be confined to injuries suffered during the [plaintiffs'] legitimate window of mental anxiety." *Id.*

In *Belcher,* this Court was required to define the phrase "accidental personal injury" within the context of the Workers' Compensation Act. In that case, a three-ton beam being hoisted by a construction crane broke loose and tumbled twenty feet, crashing without warning through a concrete roof over the plaintiff's head and landing just five feet from her. The Plaintiff sustained no bodily injury, but " 'suffered sleep disturbances, nightmares, heart palpitations, chest pain, and headaches as a result of the occurrence.' " *Belcher,* 329 Md. at 714, 621 A.2d at 874. Because the Act did not define "injury" in terms of physical or mental trauma, we turned to our line of cases involving the compensability of mental and emotional disturbances that results from a wrongful act. After revisiting and analyzing this Court's opinions addressing mental and emotional injury, we reaffirmed that damages for mental distress no longer had a "parasitic status" and that recovery is not "dependent upon an immediate physical injury accompanying an independently actionable tort." *Id.* at 733, 621 A.2d at 884 (quoting *Vance,* 286 Md. at 496, 408 A.2d at 731). Rather, we said, damages for mental and emotional disturbances are recoverable when there has been no physical impact and injury, provided that "the mental state for which recovery is sought is capable of objective determination." *Id.* at 745, 621 A.2d at 889.

Although we have liberalized the physical injury rule, there are limitations on the recoverability of damages for emotional distress. In *Dobbins v. Washington Surburban Sanitary Comm.,* 338 Md. 341, 658 A.2d 675 (1995), we confronted the related issue of whether the plaintiffs could recover money damages for "emotional injuries allegedly sustained solely as a

result of negligently inflicted damage to the plaintiffs' residential property." *Id.* at 342, 658 A.2d at 675. On two separate instances, a water pipe under the control of the defendants broke, causing large amounts of water to flood into the basement of the plaintiffs' home. The plaintiffs maintained that the defendants knew or should have known that their pipes could break and would thereby release large amounts of water into surrounding property. As a result of the damage to their home, Ms. Dobbins alleged that she experienced "severe, painful and permanent injuries to her body as well as severe and protracted shock to her nervous system, all of which have caused her and will continue to cause her great pain and mental anguish." *Id.* at 343, 658 A.2d at 676. It was clear that the flooding had not directly injured Ms. Dobbins in any physical way. She also did not allege that she feared for her safety. Rather, her injuries came about "as a direct result of the damage caused to the home."

On the defendant's motion, the trial court entered summary judgment in favor of the defendant, on the grounds that "by law the Plaintiffs' claims for mental anguish and emotional upset and distress cannot be chargeable to the Defendant in this case." *Id.* at 350, 658 A.2d at 679. Affirming that judgment, this Court acknowledged that "it remains the law of Maryland that a plaintiff cannot ordinarily recover for emotional injuries sustained solely as a result of negligently inflicted damages to the plaintiff's property." *Id.* at 351, 658 A.2d at 679–80. We adopted this rule because injury resulting from a mere damage to property was "an unusual and extraordinary result" and is not contemplated as "a natural and probable consequence" of the tortious act to the property. *Id.* at 349, 658 A.2d at 679. Thus, notwithstanding the physical injury rule, the emotional distress complained of by a plaintiff must be proximately caused by the defendant's wrongful, negligent act.

### IV

Based on the foregoing discussion, damages for emotional distress or mental anguish are recoverable in Maryland, provided that it is proximately caused by the wrongful act of

the defendant and it results in a physical injury, *Green*, 111 Md. at 77, 73 A. at 691, or is capable of objective determination. *Vance*, 286 Md. at 500, 408 A.2d at 733. This standard, we recognize, does not hold sacred the common law sequence of events for recovery of emotional damages: wrongful act, physical impact, physical injury and then emotional injury. It is more accommodating. Thus, given our precedents and because we still believe that "a nervous injury arising from actual physical impact is as likely to be imagined as one resulting from fright without physical impact, and that the former is as capable of simulation as the latter," *Green*, 111 Md. at 81, 73 A. at 692, it is no great leap to conclude that the compensability of "pre-impact fright" is permissible when it is the proximate result of a wrongful act and it produces a physical injury or is manifested in some objective form.

In the case at bar, the Court of Special Appeals, in reversing the trial court's decision allowing recovery of "pre-impact fright" damages, held that such damages could not be awarded to a decedent who dies instantly and never regains consciousness after the impact "because no cause of action will lie for 'mere fright' without physical injury (*Green v. Shoemaker*) or injury capable of objective determination (*Vance*) resulting therefrom." *Montgomery Cable*, 116 Md.App. at 388, 696 A.2d at 503. The court explicated:

"Obviously, one who died instantly upon impact or at least died without recovering consciousness following impact cannot have suffered any injury capable of objective determination *as a result of* 'pre-impact fright,' i.e., fear, terror, or mental anguish or distress from anticipation of imminent injury or death.

"If the reluctance to award damages for 'mere fright' stemmed from concern about the 'danger of opening the door to fictitious litigation,' or 'expediency,' referred to in *Green v. Shoemaker*, 111 Md. at 77–81, 73 A. 688, the fact that there was an impact after the tort victim experienced the fright might tend to alleviate that concern. But the Court of Appeals in *Green v. Shoemaker* expressly excluded 'expediency' as a basis for denying recovery of damages for

fright. *Id.* The Court of Appeals stated unequivocally in *Green v. Shoemaker* and has since repeatedly reaffirmed that, to be compensable, fear suffered by a tort victim must result in an injury capable of being determined by objective signs or symptoms. When, as in this case, the tort victim dies instantly or, at least without regaining consciousness, from the impact, there is no evidence of injury resulting from fright. Indeed, although there is a reasonable inference in this case, from the existence of skid marks, that the deceased may have experienced some mental distress upon realizing his peril, the extent of that distress and its consequences is a matter of sheer speculation, there being, in the language employed by the Court of Appeals, 'no practical standard for measuring the suffering occasioned by' that mental distress. *Green v. Shoemaker*, 111 Md. at 77, 73 A. 688.

"It should be recognized that pre-impact fright, mental distress caused by expectation or anticipation of impending doom, is an entirely different phenomenon from post-impact mental suffering or emotional distress. The latter results from and exacerbates bodily injuries sustained upon impact, *e.g.*, concern about the extent of recovery and the length of the recovery period; worry over the effect of the injuries and the duration of the recovery period on the victim's finances; and, if there is not a complete recovery, the loss of happiness or enjoyment of life suffered by one who has been rendered unable to do at all or do with the same degree of facility those things that formerly produced pleasure. All of those forms of mental distress are as much the natural, proximate, and foreseeable result of tortious conduct as bodily injury and physical pain. Pre-impact fright engendered by recognition of danger, however, does not result from bodily injuries and is compensable only to the extent that it causes or results in demonstrable or objectively determinable injury."

*Id.* at 388–89, 696 A.2d at 503. We do not agree.

■ In *Green*, the underlying reason we required physical injury as a result of an emotional injury before emotional

injuries are compensable was because "physical injury" established the genuineness of the emotional harm and guarded against feigned claims. "Physical injury" provided, and still provides, the objective manifestation of the alleged emotional injury and served, and serves, as the yardstick by which a tort victim's emotional harm may be measured. "Such an objective determination provides reasonable assurance that the claim is not spurious." *Belcher*, 329 at 735, 621 A.2d at 885. Here, the decedent's fright is accompanied by both physical injuries and independent objective manifestation. The physical injuries that accompanied the decedent's pre-impact fright are the fatal injuries he sustained as a result of the feared impact—the automobile accident. Moreover, the decedent's fright is capable of objective determination by the 71½ feet of skid marks that the plaintiffs argued, and the jury apparently believed, resulted from the decedent's apprehension of impending death, and the collision itself.

The fact that the fright or mental anguish in this case preceded the crash that resulted in the decedent's fatal bodily injuries does not affect causation. As our cases make clear, whenever a wrongful act naturally and proximately results in harm, "why should not such effect be regarded by the law, even though such cause may not always, and under all conditions of things, produce like results?" *Green*, 111 Md. at 77, 73 A. at 691. The actor responsible for the wrongful, negligent act is liable for all proximately caused emotional distress experienced by the tort victim. The wrongful conduct need only proximately cause the emotional distress or mental anguish, independent of the physical injuries; the mental disturbance need not result from physical injury. In the instant case, the automobile crash caused the decedent's fatal injuries, for which a separate cause of action exists, and the respondent is responsible for the emotional disturbance resulting from the crash. Damages for "pre-impact fright" are recoverable when the decedent experiences it during the "legitimate window of mental anxiety." *Faya*, 329 Md. at 459, 620 A.2d at 338–39. In this case, that window opened when the decedent became conscious of the fact he was in imminent

danger and it closed with his death. *See generally* Kathleen M. Turezyn, *When Circumstances Provide A Guarantee of Genuineness: Permitting Recovery for Pre–Impact Emotional Distress,* 28 B.C.L.Rev. 881, 883 (1987) ("[S]ome courts have permitted recovery for the emotional distress suffered by a victim upon his or her realization of the peril to which his or her personal security has been exposed by the defendant's negligence."), and cases therein cited. To be sure, however, "pre-impact fright" damages should compensate a decedent's fright, not the resultant death.

A rule that does not permit a decedent's estate to recover pre-impact fright damages in a survival action would be illogical in view of the fact that a victim who survives an accident similar to the one in this case would be entitled to recover damages for the emotional distress and mental anguish he or she suffered before the accident, independent of any physical injury that may have been sustained before, or after, the emotional injury. The purpose of survival statutes is to permit a decedent's estate to bring an action that the decedent could have instituted had he or she lived. Here, there is no question that, had he lived, the decedent would have been permitted to recover damages for the "pre-impact fright" he suffered before crashing into rear of the tractor-trailer.

Also, permitting a jury to determine pre-impact fright requires the same reasoning and common knowledge that we allow jurors to exercise in determining non-economic, pain and suffering damages in other tort actions, which, like assault, require an assessment of a victim's fear and apprehension. Direct evidence is not necessary. What is required is evidence from which a reasonable inference could be drawn that the decedent experienced fear or fright. Such evidence exists in this case, the 71½ feet long skid marks made by the decedent's vehicle immediately prior to the actual crash. A jury reasonably could have inferred from that evidence that the decedent was aware of the impending peril, that he was going to crash, and attempted an evasive maneuver to avoid it.

The jury equally reasonably could have concluded that the decedent suffered emotional distress or fright during that period before the crash, after he became aware of the imminent danger and began braking. This is not rank speculation.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

CHASANOW, RAKER and WILNER, JJ., dissent and file opinions.

CHASANOW and RAKER, Judges, dissenting.

We respectfully dissent for the reasons so well expressed by Judge Bloom, writing for the Court of Special Appeals in *Montgomery Cablevision v. Beynon*, 116 Md.App. 363, 368–389, 696 A.2d 491, 493–503 (1997).

WILNER, Judge, dissenting.

A jury in the Circuit Court for Montgomery County awarded $1,000,000 in damages to the Estate of Douglas Beynon to compensate Mr. Beynon's beneficiaries for the one-and-a-half to two-and-a-half seconds of fright that it assumed Mr. Beynon must have suffered before crashing into the rear of Mr. Kirkland's truck. Only by virtue of the statutory "cap" on noneconomic damages that was then in effect was that award reduced to $350,000, which still amounts, at the least, to $140,000 per second of assumed fright. The Majority effectively affirms the judgment entered on that verdict, concluding that (1) Maryland recognizes an action for pre-impact fright, even when the impact causes instantaneous death without the prospect of any post-impact pain or suffering; and (2) the existence of that fright can be sufficiently inferred from nothing more than seventy-one-and-a-half feet of skid marks. I agree with the first of those conclusions but most respectful-

ly disagree with the second, and, for that reason, dissent from the mandate reversing the judgment of the Court of Special Appeals and directing that court to affirm the judgment of the circuit court.

There are a number of decisions in other jurisdictions allowing recovery for pre-impact fright, and there appear to be two decisions that allow such a recovery based on nothing more than skid marks or other evidence that the decedent took some action to avoid the collision. *See Fogarty v. Campbell 66 Exp. Inc.,* 640 F.Supp. 953 (D.Kan.1986) (inference drawn from 56–foot skid mark); *Monk v. Dial,* 212 Ga.App. 362, 441 S.E.2d 857, 859 (1994) (inference drawn from evidence that decedent's vehicle veered shortly before collision). The Majority's approach is therefore not without *some* support elsewhere. Most of the cases actually allowing recovery, however, as opposed to simply recognizing the prospect of a recovery, are distinguishable from the case at hand, and the two that may not be I would decline to follow. Neither one of those two emanated from a State Supreme Court.

The Maryland State Police blocked the capital beltway in both directions on the night in question in order to allow the cablevision company to install a replacement cable that crossed the beltway. There were normally four westbound lanes in that area, although, at the time, one was closed due to construction. The flatbed trailer being operated by the defendant Kirkland had safely stopped about a mile from the roadblock, in the middle lane. The trailer had been stopped for at least 20 seconds before the collision.[1] Evidence indicated that trucks were stopped in the other two operable lanes as well. It is not entirely clear when Mr. Beynon first became aware of the backup and of the need to stop. He was traveling at about 55 miles per hour and, according to the evidence, would have needed a minimum of 192 feet in order to stop safely. By apparently slamming on his brakes, he was

---

1. There was evidence that the trailer had been stopped for about five minutes, inching forward every so often, but that it had remained stationary for about 20 seconds prior to the collision.

able to slow only to 41 miles per hour, which was his estimated speed at the point and time of impact. As noted, he left only seventy-one-and-a-half feet of skid marks.

The Majority is comfortable allowing the jury to infer that, during the one-and-a-half to two-and-a-half seconds that Mr. Beynon was desperately trying to stop his vehicle and avoid the collision, he must have been consumed with conscious fright—anticipating his imminent death, worrying about the effect of his death on his family, chagrined at losing the opportunity to experience the pleasures of continued life, fearful of any pain that he may momentarily suffer, concerned, perhaps, about what, if any, kind of afterlife he might face. If there was any substantial evidence that any of those thoughts were, in fact, consuming Mr. Beynon during that second or two, I would agree that a recovery would be permissible. But there was no such evidence. It is rank speculation to conclude that Mr. Beynon was consciously thinking about anything other than stopping his vehicle, or, indeed, that his mind and body were engaged in anything but an instinctive reaction directed entirely at self-preservation, requiring little or no ideation at all.

Most of the cases relied upon by the Majority involved circumstances where the decedents were obviously aware of an impending disaster that they, themselves, could do nothing to avert. They were essentially helpless in the situation, left only to contemplate their fate. In *Solomon v. Warren*, 540 F.2d 777 (5th Cir.1976), for example, the decedents were passengers on a small plane that ran out of gas over the open sea. The court assumed that there was enough time for them to anticipate their death and to suffer the pain of knowing that their three children would be orphaned. Similar circumstances pertained in *Haley v. Pan American World Airways*, 746 F.2d 311 (5th Cir.1984) (plane's wing struck a tree, rolled, hit the ground, and disintegrated four to six seconds later) and in *Shu–Tao–Lin v. McDonnell Douglas Corp.*, 574 F.Supp. 1407 (S.D.N.Y.1983) (decedent, a passenger, able to see engine breaking away at start of 31–second flight and feel subsequent rolling and banking). In *Missouri Pacific R. Co. v. Lane*, 720

S.W.2d 830 (Tex.App.1986), the decedent's truck stalled at a railroad crossing in the path of an oncoming train; he sat in the truck for six to eight seconds contemplating the imminent disaster.

When a person is left in that kind of passive, hopeless situation, the mind is indeed free to contemplate, even if momentarily, the awful reality of what is about to occur. When, as in Mr. Beynon's case, the person either reacts instinctively or marshals his or her whole being in a supreme effort to control the event, *absent some evidence beyond merely that effort*, it is purely speculative to infer that the decedent was consciously pondering the effects of an impending death. There may, of course, be cases where other evidence *does* exist—where a witness testifies as to statements or conduct by the decedent more directly indicating a conscious contemplation of death and the consequences of it. *Thomas v. State Farm Insurance Co.*, 499 So.2d 562 (La.App. 1986), *writ denied*, 501 So.2d 213 (La.1987) is an example. As noted by the Majority, the decedent there grabbed her son's arm and gasped as she saw the oncoming vehicle that struck and killed her.

This case is certainly an extreme one, but, in one sense, it is not unusual. In most pre-impact fright cases where an award is made, although the absolute size of the jury award is ordinarily not great, often ranging from $5,000 to $15,000, the amount per second of fright is enormous. *See* Kathleen M. Turezyn, *When Circumstances Provide a Guarantee of Genuineness: Permitting Recovery for Pre-impact Emotional Distress*, 28 Boston C.L.Rev. 881, 907 and n. 165 (1987). Here, the jury's actual award amounted to at least $400,000 per second of fright, later reduced to $140,000 per second of fright. The problem, however, is not simply one of amount. Whether the award is great or small, when grounded on nothing more than skid marks or other evasive action, it can only be a sympathy verdict based not on any substantial evidence of fright but rather on a desire either to compensate the decedent's beneficiaries for his or her death, beyond what is allowed in a wrongful death action, or to punish the wrong-

doer.[2] Maryland has long followed the general principle that, "if compensatory damages are to be recovered, they must be proved with reasonable certainty, and may not be based on speculation or conjecture." *Asibem Associates, Ltd. v. Rill,* 264 Md. 272, 276, 286 A.2d 160, 162 (1972); *Charles Co. Broadcasting v. Meares,* 270 Md. 321, 311 A.2d 27 (1973). We should not depart from that principle, and it appears to me that the Majority has done so.

---

**2.** As the Majority points out, the jury in this case also awarded Mr. Beynon's parents $367,000 in economic losses and $2,500,000 for their past and future pain and suffering from their son's death.